Jackson *vs.* The State of Georgia.

53 195
91 712

ELDRIDGE JACKSON, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[TRIPPE, Judge, was providentially prevented from presiding in this case.]

1. Under the facts of this case, we cannot say that the verdict of the jury is so contrary to or without support from the testimony, as to authorize this court to determine that the judge of the superior court abused his discretion in refusing to set it aside.

2. As the conviction in this case is founded wholly on circumstantial testimony, this court directs that the judge of the court below resen-

tence the prisoner, and that in so doing, he exercise the discretion vested in him by law, in cases where the conviction is founded solely on circumstantial testimony.

New trial.   Sentence.   Before Judge KIDDOO.   Randolph Superior Court.   November Adjourned Term, 1873.

Eldridge Jackson was placed on trial for the offense of murder alleged to have been committed upon the person of his wife, Ann Jackson, on December 29th, 1873.   The defendant pleaded not guilty.

The evidence was purely circumstantial, but very conclusive as to the homicide having been committed by the defendant.   The deed was done in a drunken frolic growing out of the Christmas festivities.   The defendant came home to supper intoxicated and fired off his pistol in the house.   Soon after a second shot was heard, which caused a friend to run over to his house, where defendant's wife was found dead. The defendant was seen running from the house, his infant son crying to him, "Lord, papa, you have killed mother." He was arrested with the pistol in his hand.   Two barrels had been discharged.   He seemed to be unconscious of the act which he had committed.   There was no cause of difficulty between him and his wife.   They apparently lived happily together.

The jury returned a verdict of guilty.   A motion was made for a new trial because the verdict was contrary to the testimony.   A new trial was refused and the defendant sentenced to be hanged.   To which ruling he excepted.

JOHN T. CLARKE, for plaintiff in error.

JAMES T. FLEWELLEN, solicitor general, by B. S. WOR-RILL, for the state.

McCAY, Judge.

1. We are not prepared to say that the verdict in this case is so contrary to, or so unsupported by, evidence, that the judge erred in refusing to set it aside.   One of the witnesses

Jackson *vs.* The State of Georgia.

hears a shot; he hurries to the place indicated by the sound, which is only a few yards off, and finds at the door a woman with a mortal wound made by a bullet. He sees *running* out of the yard by the back way, the prisoner, who is almost immediately after arrested, with a pistol in his hand recently discharged. On his arrest the prisoner is told he is charged with killing his wife; he does not deny it, but says: "Have I killed my wife? If I did so I did wrong; she was a good woman." He makes no explanation; he does not say it was an accident; he does not set up any excuse or give any reason for the act. By themselves these are strong circumstances to show the prisoner guilty of murder. The books are-full of cases founded on circumstances no stronger than this. But it is said that the other circumstances go to show that he is not guilty. It is not pretended that they even *tend* to show the death was not caused by his hand or his pistol. On the contrary, they only add to the proof that the act was his. The argument is that they explain his act; that they show, or afford, fair ground of inference that the killing was accidental, though it is admitted that in any event he must be guilty of involuntary manslaughter in one or the other of its forms. It is said, 1st, that the deceased was his wife, and that the kindest relations seem to have existed between them. 2d, that the prisoner was drunk, and that this shows, or tends to show, an accident probable. 3d, it is said that his having fired off one barrel of his pistol just before, with a very plain intend to·hurt nobody, the inference is strong that this, or something like this, was repeated by him with the sad and unexpected result which happened. But they no not explain the important facts that he ran away from the place of the killing almost immediately after it occurred, and that on his arrest, four or five minutes afterwards he made no explanation, set up no excuse, except to ask, "Lord a mercy, have I killed my wife? She was a good woman!" And except, as stated by Davis, that if he had killed his wife, he did not know why he did it. Indeed, these statements, part of the *res gentœ*, rather tend to show that the killing was not accidental. They not only show a failure by

him, at the time, to set up accident as an explanation, but indicate that he did kill her, though he could not assign a motive for the act. There is, in our judgment, nothing in any of this evidence to justify us in saying that the jury have arrived at a conclusion contrary to the evidence or without evidence. The hypothesis of an accident is a very poor explanation, and has for its basis only the fact of the first shooting, and the want of any proof of bad feeling between the prisoner and his wife. But we know very little of the recesses of the hearts of our neighbors, or of the skeleton behind the door of many with whom we daily associate, and we have no explanation of why the witness, Scott, came to be eating supper there, nor why he quit so suddenly when the prisoner fired the first pistol. Nor do we know what the prisoner thought about his presence there. If, the killing was not accidental, if the shooting was *at* her, the drunkenness of the prisoner cannot help him. If, in his drunken condition, he was jealous, and in the reckless, madness of *drunken* jealousy, he took her life, even with the intent which a drunken man may have, that does not help him. Even *Jones vs. The State,* 29 *Georgia,* 594, does not go so far as to authorize drunkenness to be used as a defense in such a case as that we have supposed.

If this killing was accidental, and only criminal from the want of caution used in doing the act, it is very difficult to explain why he ran as soon as the thing occurred, and why he failed to say it was an accident. If he had sense enough to *consider* that he might be charged with murder, and to run from the house, is it not very strange that he did not have sense enough to say it was accidental when Kirksey arrested him? There is no conceivable explanation of the facts of this case, so as to authorize us to set aside this verdict, except, that the act was accidental, and we are unable to see the force of that explanation. It fails to account for the conduct of the prisoner after the act. Its only foundations, are, as we have said, that it does not appear there was any hard feeling between himself and wife, and that from his conduct just before, it is possible an accident so might have happened in an attempt to shoot

another Christmas gun. But who can account for the acts of a drunken man? He often gets furious at a trifle, and on the instant, and that with his best friends, and it is just as probable, nay, more probable, that for some slight opposition to his wishes, his drunken passions were aroused, and he killed her in his anger. If this be so, he is guilty, in law. His drunkenness does not excuse him. Society cannot afford to permit such a defense for a killing, even though the guilty person is, for the *nonce*, practically insane. It is a self-imposed condition, and it would, if the excuse were allowed, be the cloak of every assassin. It is no reply to circumstances indicating guilt so strongly as do these, to construct a theory which might account for the killing, without fixing the guilt of murder. If a man be found dead, shot by a pistol bullet, and by a train of circumstances we can trace out the hand which fired the pistol, the law, *prima facia*, presumes malice, either express or implied. And yet, in almost every case, where the killing is not actually seen, it is possible to imagine an accident. Take even the case of Dr. Webster who killed Parkman. No eye saw the deed, but the facts pointed out Webster as the man who disposed of the dead body. Might it not have been as fairly imagined that the killing was accidental in that case as this. True, he tried to hide and destroy the body. But did not this man run from the dead body of his wife, and impliedly admit the killing immediately afterwards?

2. For these reasons we affirm the judgment, though we will direct that the judge resentence the prisoner, and in so doing, exercise the discretion vested in him by law in cases where the conviction is founded solely on circumstantial evidence. We do not suggest what his sentence shall be, but we leave it open to the judge, now that some time has elapsed, to commute the punishment if, as his conscience is at present informed, he thinks that course most consistent with justice, the public interest, the fallibility of human belief, and such charity as is consistent with justice.

Judgment affirmed.