Marshall *vs.* The State of Georgia.

have moved to dismiss, notwithstanding the property levied on had been replevied.   54 *Ga.*, 680; 60 *Id.*, 113.

Judgment reversed.

---

MARSHALL *vs.* THE STATE OF GEORGIA.

1. The verdict was supported by the evidence.
2. When taken in connection with the entire charge, there was no error in charging that the jury had nothing to do with the consequences of the verdict; the judge having instructed them that, if they found the defendant guilty of murder, they had the right to recommend that he be punished by confinement in the penitentiary for life, and if they made such recommendation, that had to be the penalty; or that they had the right to refuse the recommendation, if they saw proper.
3. A charge that " when the state has shown that the defendant has 'done the killing, such killing would be presumed to have been done with malice, unless the defendant or the circumstances show the contrary," was substantially correct.
4. That the court, in charging at the request of defendant's counsel that the jury might find the defendant guilty of assault and battery, if the facts warranted the finding, used the word " mere " before " assault and battery," was not an expression of opinion. It was used in the sense of " only."
5. A ground of a motion for new trial, not verified by the judge, will not be considered by this court.
(*a.*) Where a witness had been objected to on account of her tender years, and an examination was had to test her competency, at the close of which the objection was withdrawn, the fact that the court remarked to counsel, " Yes, she seems to be a right intelligent little girl," amounted to nothing more than that the judge believed that she had sufficient intelligence to render her competent as a witness; and this was acquiesced in by the withdrawal of the objection.
6. Where, upon a conviction for murder, the jury fails to recommend imprisonment for life, and where the conviction is had solely upon circumstantial evidence, it is discretionary with the judge to sentence to death or to imprisonment for life, and this court will rarely, if ever, interfere with the exercise of this discretion. The case must be an extreme one to induce or warrant such interference.
(*a.*) Whether the conviction was based solely on circumstantial evidence in this case, is questionable.

(*b*.) That the judge, in passing sentence, remarked that he desired to punish the defendant by imprisoning him in the penitentiary for life, but did not feel authorized to do so, as he was not of opinion that defendant was convicted solely on circumstantial evidence, furnished no ground of exception.

(*c*.) This case distinguished from that in 53 *Ga*., 195.

(*d*.) The entire matter is still in the power of the lower court, and he may, if he wishes, and is satisfied that it is a proper case for the exercise of his discretion, make a different sentence.

September 9, 18'4.

Criminal Law. Murder. Charge of Court. Practice in Superior Court. Practice in Supreme Court. Sentence. Before Judge BROWN. Cherokee Superior Court. February Term, 1884.

Jerry Marshall was indicted for the murder of James D. Cheney, a negro child between two and three years of age. On the trial, the evidence for the state was, in brief, as follows: The mother of the dead child had been living with the defendant, though not married to him, for about two months before the child's death. She had two children, the one now deceased and a little girl some years older, neither of whom were akin to defendant. The defendant whipped the deceased very severely on several occasions. About two weeks before the death, he wore out a stout switch on the child, and then whipped him with a piece of board or scantling; on another occasion, he used a piece of new rope; and once he told the child that he would ruin him forever. His treatment of the child caused quarrels between him and the mother, who took the part of her offspring. The child had been sick for some time, having an affection of its bowels, and was quite weak and reduced in health. It also had some species of eruption or tetter. Once defendant carried him off because he (defendant) was angry with the mother, but returned him at her request. On the morning when the child died, its mother rose early and sent her little daughter to the house where she (the mother) was engaged in cooking, instructing the daughter to make a fire for her. She washed

and dressed the child and placed it on the hearth near the fire. She then went out to prepare breakfast, leaving only the child and the defendant in the room. After making a fire in the stove, the girl returned to take care of the deceased, according to her mother's instructions, but found no one in the room. She carried a churn-dasher to a neighbor's, and as she returned, she met the defendant carrying the child in his arms. The child appeared to be asleep, with its head on defendant's shoulder. Defendant carried him to the house and laid him down on the hearth. The child began coughing. Defendant said he wondered what was the matter. Directly the child began to groan, and defendant then said that he would go for its mother, which he did. The mother came in about half an hour, having been absent altogether about two hours. She found the child nearly or quite dead, but she thought she heard a rattling in its throat. A physician was sent for, and upon his arrival found the child dead. There were marks of violence on its neck and breast, as though from licks, and in one place there was a scratch or break in the skin. The neck was dislocated or broken. The physician testified that, in his opinion, this was the cause of its death. Other witnesses saw defendant take the child by the hand and carry it from the house towards the woods, and after an absence of nearly half an hour, return with the child in his arms, its head resting on his shoulder, as if asleep or dead. After the death, defendant ran away, but was caught and brought back.

Defendant introduced testimony of experts as to whether a dislocation or breaking of the neck could be definitely determined without an autopsy, or whether a child that had been dead for an hour or an hour and a half could emit a rattling sound from its throat. The testimony of the experts for the state and of those for the defence was somewhat conflicting, though they all admitted that an autopsy was the more satisfactory method of determining the nature of the injuries.

Defendant made a statement, to the effect that the child's mother had asked him to notice it, and to take it out if it required an action from its bowels; that for this purpose he carried it from the house, and discovering that it was sicker than he supposed, he carried it back to the house, and upon its symptoms becoming alarming, he went for its mother, and subsequently for the doctor. He denied in any way causing the child's death, and stated that, after suspicion was aroused against him, and he was informed that he would probably be put in jail, though he was innocent, and saw a number of men with guns and pistols coming after him, he ran away.

The jury found the defendant guilty. He moved for a new trial, on substantially the following grounds:

(1) to (4.) Because the verdict was contrary to law, evidence and the weight of the evidence.

(5.) Because the conviction was founded solely on circumstantial evidence, and the solicitor general so argued to the jury, and that the defendant would not necessarily be hung if they found him guilty of murder and failed to recommend him to imprisonment for life; but the judge, after conviction without recommendation, told the defendant, in passing sentence, that, in his opinion, this was not such a case as was contemplated by the Code; that it was not a verdict founded solely upon circumstantial evidencet and that he had every inclination to commute his sentence and send him to the penitentiary for life, if he thought he had the power to do so. The defendant insists that this was incorrect, but if not, that the judge should have so charged the jury and have corrected the impression made by the solicitor general. [The presiding judge certified that the solicitor general said to the jury, "Now, gentlemen of the jury, it does not necessarily follow that he will hang, if you fail to make a recommendation;" that the court stopped him and remarked, " You need not go into that matter." The solicitor said, " Very well, gentlemen, I withdraw that remark. It is probably not proper that

I should discuss the question." The judge also certified that, in passing sentence, he remarked that he would be inclined to send the defendant to the penitentiary for life, but doubted his right to do so.]

(6.) Because the court charged the jury that they had nothing to do with the consequences of their verdict. [The court instructed the jury fully as to their right to recommend to imprisonment for life.]

(7.) Because the court charged as follows: "The law presumes the defendant to be innocent, and the burden is on the state to show his guilt; but if the state proves, and if the state has in this case proved, that Jerry Marshall, the defendant, killed that child, as charged in the bill of indictment, or killed it at all, then the burden is changed; that is to say, the law presumes that it was a malicious killing, and that the killing was murder, and the burden would then be upon him to show either justification for it or such circumstances of mitigation as would bring it down from murder to some other grade of homicide; and if he should fail to do that, the law would hold him responsible as a murderer. So the burden is first upon the state to prove its case; the state does that by proof of the killing; when that is done, the burden is changed, and it is put upon him; he then stands as a murderer, unless he shows either justification or such mitigation as to make it some other offense."—Objected to on the ground that "the justification or circumstances of mitigation may as well arise from the evidence of the state as from that of the defendant." [See the explanation of this ground in the third division of the decision.]

(8) Because the court intimated an opinion as to the guilt of the defendant, and as to the crime of which he was guilty in the following charge: "I have been asked by the defendant's counsel to charge you the law as to a mere assault and battery."

(9.) Because the court remarked in the hearing of the jury, concerning one of the state's witnesses, " Gentlemen,

this seems to be a very intelligent little witness." [The presiding judge certified that the witness, who was a child, had been examined as to her competency, and counsel for the defence stated that he withdrew the objection; whereupon the court merely replied, "Yes, she seems to be a right intelligent little girl."]

The motion was overruled, and defendant excepted.

GEO. R. BROWN; NEWMAN & ATTAWAY; THOS. W. MILNER, for plaintiff in error.

C. ANDERSON, attorney general; GEO. F. GOBER, solicitor general; P. P. DUPREE; J. B. ALEXANDER, for the state.

HALL, Justice.

The defendant in the court below was indicted and tried, and found guilty of murder, and the jury failing to recommend a lower punishment, he was sentenced to death. A motion was made for a new trial, on various grounds, and overruled, and to the judgment overruling this motion he excepted and brought the case to this court.

1. There is sufficient evidence to support this finding, and the court committed no error in refusing the motion upon the grounds that the verdict was contrary to evidence, etc. The court charged, at the request of defendant's counsel, " that in all cases of circumstantial evidence, the circumstances must be so strong as to exclude every reasonable hypothesis other than that of defendant's guilt," and repeated, in his own language, the law upon this subject as clearly and strongly as he was authorized or required to do. This disposes of the first four grounds of the motion.

2. There was no error in the charge excepted to in the 6th ground of the motion, when taken in connection with the entire charge, to the effect " that the jury had nothing to do with the consequences of the verdict." They were instructed that, if they found the defendant guilty of mur-

der, they had the right to recommend that he be punished by confinement in the penitentiary for life, and if they made that recommendation, that had to be the penalty; in other words, they fixed the penalty, or they had the right to refuse the recommendation, as they saw proper. If they failed to recommend, the prisoner might be hung, or if they recommended that he be imprisoned in the penitentiary for life, then that was the penalty fixed by law; that was a matter entirely with them, upon which the court gave them no instruction, as he had no right to do so; that it was a matter of which they had absolute control. This charge was in exact accordance with the ruling of this court in the case of *Hill vs. The State*, 72 *Ga.*, 131.

3. The 7th ground of the motion, which relates to shifting the burden upon the proof of the killing, does not fully set out the charge of the court upon that subject. As actually given, it was that, " When the state has shown the defendant has done the killing, such killing would be presumed to have been done with malice, unless the defendant or the circumstances of the case show the contrary." That this is a substantial compliance with the requirement of the law upon the subject, we think there can be no doubt. See cases collected in Hopkins' Penal Laws, §§858, 859.

4. There is manifestly nothing in the 8th ground of the motion; the court certainly intimated no opinion as to what had or had not been proved, when, at the request of defendant's counsel, he charged that the jury might find the defendant guilty of assault and battery, if the facts warranted the finding, by the use of the word " mere " to qualify " assault and battery." It is evident from the context that it was used in the sense of " only."

5. The 9th ground of the motion is not verified by the judge, and should not therefore be considered by the court. It seems that the witness had been objected to on account of her tender years, and an examination was had to test her competency, at the close of which the objection was

Marshall *vs.* The State of Georgia.

withdrawn, when the court remarked to counsel, "Yes, she seems to be a right intelligent little girl," which amounted to nothing more than that the judge believed she had sufficient intelligence to render her competent as a witness. It was the decision of a question raised by defendant's counsel in which they acquiesced, as was shown by their withdrawal of the objection.

6. The remaining ground of the motion is the 5th, and this was the only ground confidently relied on at the hearing in this court. It is, so far as verified by the court, that the verdict was founded upon circumstantial evidence, and the jury failing to recommend imprisonment for life in the penitentiary, the judge, in passing sentence, remarked, in substance, that he desired to punish the defendant by imprisoning him in the penitentiary for life, but did not feel authorized to do so, as he was not of opinion that the conviction was founded solely on circumstantial evidence.

To say the least, it is questionable if the judge was not right in the conclusion he announced. Some of us have had difficulty in bringing our own minds to a different result. But be this as it may, we are agreed that the remark excepted to in passing the sentence is not matter upon which error can be properly assigned. It is discretionary with the judge, where the jury fail to recommend otherwise, and where the conviction is had solely upon circumstantial evidence, to sentence to death or to imprisonment in the penitentiary for life (Code, §4323), and this court will rarely, if ever, interfere with the exercise of this discretion. The case must be an extreme one to induce or even to warrant the interference of this court. 28 *Ga.*, 576. This record certainly makes no such case. It is true that in *Jackson vs. The State,* 53 *Ga.*, 195, where the conviction was founded wholly upon circumstantial evidence, this court directed the judge to re-sentence the prisoner, and in so doing to exercise the discretion vested in him by law, where the conviction is had solely upon such evidence, but what the sentence should be was not intimated or

suggested. This decision was rendered by two justices—the third being absent—and as to the character of the evidence upon which the conviction took place, there seems to have been no doubt in the minds of the court. In the present case, there is, as we have seen, grave doubt upon that subject in the minds of a portion of this bench. The entire matter is still within the power of the lower court, and he may, if he wishes and is satisfied that it is a proper case for the exercise of his discretion, make a different sentence.

Judgment affirmed.