### COLBERT *v.* THE STATE.

1. In a trial for burglary where it appeared that the accused was a servant in a boarding-house, and entered a hired room of a lodger by using the key which he obtained by taking it from where the occupant of the room usually kept it hanging up in the hall, and there was no evidence whatever that the accused had any duties to perform in the room, or that he had any permission to enter it, or had ever entered it by direction or permission of any one, it was not error as against him to instruct the jury that if he had a right to go in there, and went in by permission of the owner or permission of the person who had authority to send him in; if he was directed, for instance, to go in there and clean up the room or open it, and went in by permission of the owner, and after being in, stole, that would not be burglary but larceny from the house.

2. Nor was it error to charge the jury thus: "If the defendant asserts that he went in by permission of the landlady, it is his duty to make it appear, upon the State showing the room was broken and unlawfully entered and that the defendant did it—that it was unlawfully entered by the defendant by taking the key and opening the door; and if the defendant sets up that he went in there by permission of any one who had a right to give it, that it is his busi-

ness to make it appear"; this charge being made while stating the
law applicable to the case generally, and not while charging on
the prisoner's statement, and there being nothing whatever in the
evidence adduced by the State tending to show that the accused
had permission to enter the room for any purpose. In another
part of the charge the jury were distinctly informed that they
were authorized to take the prisoner's statement for what they
thought it was worth and they could receive it all as true and ac-
cept it in preference to the sworn evidence. The statement set
up that it was the business and practice of the accused to go into
the room to clean it up, that he went in for that purpose on the
occasion of the alleged burglary, and after so doing took the goods,
locked the door, carried the key back and hung it up in its place.

3. The evidence warranted the verdict, and there was no error in
denying a new trial; but the long term of thirteen years in the
penitentiary, imposed by the sentence, being apparently out of
proportion with the circumstances attending the commission of
the offence, direction is given that the accused, if not already un-
dergoing his punishment, be resentenced, and that the presiding
judge reduce the penalty if in his opinion, after further reflection,
so doing will consist with the ends of justice and the proper en-
forcement of the law.

May 22, 1893.

Before Judge BARTLETT. Bibb superior court. No-
vember adjourned term, 1892.

C. P. STEED, by brief, for plaintiff in error.

W. H. FELTON, JR., solicitor-general, by HARRISON &
PEEPLES, *contra.*

BLECKLEY, Chief Justice.

The indictment was for burglary. It charged that,
with intent to commit a larceny, the accused, on the 25th
of December, 1892, broke and entered the dwelling-
house of G. T. Banks, the same being a hired room oc-
cupied by the latter in a public boarding-house kept by
Miss Addie Gregory, and after so breaking and entering,
proceeded to take therefrom two pairs of pants, each of
the value of $2.50, and one coat and vest of the value of
$10.00, the property of Banks. It appeared at the trial
that in December, 1892, Mr. Banks was absent from his
room in the boarding-house from about six o'clock A. M.

of the 25th to 12 o'clock M. of 26th. ·On leaving, he-
locked the door and hung up the key in the hall, where-
he was accustomed to keep it. When he returned, the-
room was locked and the key was in its proper place,.
but the clothing mentioned in the indictment had been
stolen from the room. The accused, who was previously
employed about the boarding-house, in what ˙capacity
does not appear with certainty, but most probably as a,
servant, was gone. Within two weeks thereafter he
was brought back to Macon with the clothes in his pos-
session, having been arrested by the marshal of Forsyth,.
a neighboring town. He confessed that he entered the
room by unlocking the door with the key, and that he
took the clothing. In his confession he said nothing of
the purpose for which he entered the room, or of any
permission to enter, or of any business or duty which
he had to perform therein. Nor was there any evi-
dence from any source tending to show that he had, or
ever had, permission or was under any duty or had any
right to enter. In his statement to the court and jury
at the trial, he said, in substance, that it was his regular
business to clean up, or assist in cleaning up, the room;
and that on this occasion he went in for that purpose,
took the pants, then locked the door and hung up the
key. He offered no testimony to support his statement
or to controvert the evidence against him. He made no
mention of the coat or the vest.

1. One ground of the motion for a new trial com-
plains that the. court charged the jury thus: "If, how-
ever, the entering was lawful, if he had a right to go in
there, and went in there by permission of the owner or
permission of the person who had authority to send
him in there; if he was directed, for instance, to go in
there and clean up the room, if he was directed to go
in there and open it, and went in there for a lawful
purpose, and went in by permission of the owner, and

after being in there, stole, that would not be burglary, but larceny from the house." This charge was certainly not erroneous as against the accused. True enough there was no evidence on which to base it, but the bearing of the instruction was wholly in his favor; for it suggested to the minds of the jury hypothetically a state of things which might by conjecture reduce his offence from burglary to larceny from the house. Had the jury been prompted by an irrelevant charge to go out of the evidence to frame a theory against him, he would have had cause for complaint; but to put them on conjecture for extenuating or mitigating facts, when none whatever appeared in the evidence, was helpful rather than prejudicial to his case. Besides, there was some warrant for the charge in the contents of the prisoner's statement.

2. Another ground of the motion makes complaint that the court charged the jury in these terms: "I charge you, if the defendant asserts that he went in by permission of the landlady, it is his duty to make it appear, upon the State showing the room was broken and unlawfully entered and that the defendant did it—that it was unlawfully entered by the defendant by taking the key and opening the door; and if the defendant sets up that he went in there by permission of any one who had a right to give it, that it is his business to make it appear." Had the State adduced evidence from which defensive facts appeared or could be inferred, this charge might have been open to criticism. *Crawford* v. *The State*, 12 *Ga.* 142; *Mitchell* v. *The State*, 63 *Ga.* 222. But such was not the case. Nothing proved by the State tended to show that the accused had permission to enter the room for any purpose. On the contrary, Mr. Banks, the occupant, testified that this boy had been anxious to come into the room and clean it up, and had come to him several times, and that he, Banks, had notified the

landlady not to let him go in.   Nor was the charge set
out in this ground of the motion given whilst the court
was instructing on the prisoner's statement made to the
court and jury at the trial.   It was given while expound-
ing the law applicable to the case generally, that is, in
its relation to verification by evidence.   In a previous
portion of the charge the statement had been dealt with
by the court as follows: "A defendant in all criminal
cases is entitled to make a statement.   The defendant
in this case has made a statement; that statement is not
evidence, and not under oath, but still the jury under
the law are authorized to take it just for what they think
it is worth; they can receive it all as true if they want
to; they can accept it, if they see fit, in preference to
the sworn evidence, or you can reject it all or accept it
all; you can deal with it just as you think in your judg-
ment and opinion it is entitled to be dealt with."   So
far as appears, there was no request for any special in-
struction touching the statement.   We think this is a
case in which there was no danger of the jury overlook-
ing the statement, and that they must have been aware
that they could and should give it credit if they believed
it true.   Their verdict vouches for their unbelief.

3. The guilt of the accused to the extent of larceny
from the house was undisputed; and with his statement
discredited, he was guilty, according to strict law, of
burglary.   Technically, to open a locked door with the
owner's key, is a sufficient breaking, though the key be
left within the reach of every comer, and prove a temp-
tation to the dishonest by affording easy opportunity to
commit larceny.   In the present case, the intent with
which the accused used the key and entered the room
grades his offence as between felony and misdemeanor.
If the intent to steal was formed after he entered, his
offence was larceny from the house; and inasmuch as
the goods stolen were not equal in value to $50, the

punishment for stealing them might be fined not more than $1,000, imprisonment in jail not more than six months, and confinement at labor in a chain-gang not exceeding one year. If the intent to steal was formed before entering the room, his offence was burglary, and he could be imprisoned at labor in the penitentiary for a term not less than one year nor more than twenty years. The jury having found him guilty of the latter, and the finding being based on sufficient evidence, he must be treated as a felon, though the moral elements involved in his conduct, and most of the physical elements, are exactly the same as those appertaining to larceny from the house. The precise time when one of the criminal elements, to wit intent to steal, originated, may seem a small matter, but the law in its wisdom attaches to it important consequences. Where, however, as in this case, no violent breaking occurs, but the means of entry are the same with which the owner of the house would himself effect ingress, the burglary is, in part, constructive only, and that consideration should ordinarily have weight in fixing the punishment. Within the limits of his legal discretion, the right and power of the trial judge to be more or less tender in every case, according to its actual facts and circumstances, cannot be doubted. But in no case can the dictates of mercy be overlooked or forgotten. Mercy has always been a judicial attribute. Its function its not to withdraw justice or withhold it, but to measure it. Certainty of punishment, rather than severity, is the most potent factor in the repression of crime. Whether tested by principle or practice, discreet moderation is better than extreme rigor. The temper of government, as manifested through the judiciary, should be always firm, but never fierce. Judicial ferocity has been rare in modern times, and we are glad to say, is unknown by experience in Georgia. Society demands protection, but does not thirst for

vengeance. The vicious are to be restrained, but suffering should never be inflicted by the public authority beyond what is necessary for this purpose. If society could be safe and prosperous without chastising its unruly members, it would have no right to punish at all. In so far as human punishment is without necessity, it is without justification, no matter who may be its author or its minister. These general observations are made in order to disclose and render fully intelligible the spirit in which the direction which we give in the present case has been conceived. After a careful study of the facts and circumstances of the case, we are impressed with the apparent disproportion between them and the long term of imprisonment in the penitentiary which the sentence pronounced upon the plaintiff in error imposes, that term being thirteen years. We are mindful that this disproportion may be only apparent and not real, for local conditions of which the record affords no information, and with which we are or may be unacquainted, may materially affect the question. Nevertheless, when in a criminal case of which this court has acquired jurisdiction by writ of error, the sentence looks unduly harsh on its face, it is our privilege, and in this instance we deem it our duty, to invite a reconsideration of it by the judge who pronounced it, and to do this by way of direction as provided for in sections 218, 4284, 4285 of the code. We trust our upright and able brother of the circuit bench will believe that we, like himself, act from conscientious views of duty, and in no spirit of censure or criticism, official or personal. We should deem ourselves unworthy to preside in this high tribunal if either the wish to offend, or the fear of offending, could mix with the motives of our judicial conduct. This disclaimer would be needless, were it not very rare in practice for this court to give express direction that a prisoner legally convicted be resentenced. The only

instance known to us is that reported in 53 *Ga.* 195, the case of *Jackson* v. *The State*, in which the language of the court was as follows: "For these reasons we affirm the judgment, though we will direct that the judge re-sentence the prisoner, and in so doing, exercise the dis-cretion vested in him by law in cases where the convic-tion is founded solely on circumstantial evidence. We do not suggest what his sentence shall be, but we leave it open to the judge, now that some time has elapsed, to commute the punishment if, as his conscience is at present informed, he thinks that course most consistent with justice, the public interest, the fallibility of human belief, and such charity as is consistent with justice."

The direction we give in the present case is expressed in the third head-note, and its terms will be certified by the clerk to the superior court of Bibb county in ac-cordance with section 4285 of the code.

*Judgment affirmed, with direction.*