23863.   MOSLEY *v*. THE STATE.

■■■■■■■■■■■■

DECIDED MAY 9, 1934.

■■■■■■■■■■■■

*W. L. Nix,* for plaintiff in error.
*Clifford Pratt, solicitor-general,* contra.

GUERRY, J.   We are satisfied·that the evidence against the accused, charged with burglary, was insufficient to support the verdict of guilty, and that the trial judge erred in not granting the motion for a new trial upon the general grounds.   The defendant was indicted for burglary, in that he did break and enter the house of G. L. Sikes, with intent to .commit a larceny therein.   In a prosecution for burglary it is essential that there be proof of a *breaking,* then an entering, and that the house broken was one of the character upon which burglary may be committed.   Without sufficient proof of a breaking the crime is not made out.   The breaking may be actual or constructive, but it must appear in one form or the other.   See *Tremble* v. *State, 24 Ga. App.* 26 (99 S. E. 544) ; *Strickland* v. *State,* 12 *Ga. App.* 640 (77 S. E. 1070) ; *Lockhart* v. *State,* 3 *Ga. App.* 480 (60 S. E. 215) ; *Kent* v. *State,* 84 *Ga.* 438 (11 S. E. 355, 20 Am. St. R. .376) ; *Colbert* v. *State,* 91 *Ga.* 705 (17 S. E. 840) ; *Lanier* v. *State,* 76 *Ga.* 304; *While* v. *State,* 51 *Ga.* 286; *Grimes* v. *State,* 77 *Ga.* 762 (4 Am. St. R. 112).   From the evidence for the State it appears that Mrs. G. L. Sikes left her home in Dacula before dark for Lawrenceville, which was several miles away, to go to the home of her son-in-law, in order that she might meet another daughter, who was to arrive on a train due in Lawrenceville about nine o'clock.   She, in company with her daughter and son-in-law, met the other daughter at the train and immediately thereafter started to her home in Dacula, arriving there some fifteen minutes later.   From the evidence it appears that Mrs. Sikes entered the house first, for the reason that she had a key, the door being locked.   It appears that after having been in the house for some fifteen minutes the defendant was discovered under the bed in her daughter's room.   He had whisky on

his breath. There is an absolute lack of testimony on the part of Mrs. Sikes as to whether the doors and windows of the house were closed when she left some several hours before, nor was there any testimony that no one was in the house when she left, or as to whether the house was closed during the day, the only testimony on this point being that of her son-in-law that all the doors and windows were closed. However, it appears that his testimony, itself vague and weak, had reference to the condition of the house after they arrived at the house, and not to whether any of the doors and windows were open prior to that time. The testimony disclosed that there was no sign of breaking in any of the windows or doors. As we construe the evidence, it is insufficient to show any breaking into the house by the accused.

We recognize that had the testimony shown that no one was in the house at the time Mrs. Sikes left it before dark, and that at that time all the windows and doors of the house were closed, the defendant would not be presumed to possess any supernatural characteristics, and where he was found inside the house, under the bed, such proof would be sufficient evidence that he broke and entered the house. However, no such testimony appears in this case. Although we feel that for the defendant to conceal himself under a bed in a house not his own is highly reprehensible, and punishment should be had for such conduct, we feel it our duty to uphold the law as it is written, and hold that there was not sufficient proof introduced against him to convict him of the crime of burglary. See also, in support of the judgment of reversal, the case of *Clements* v. *State,* 4 *Ga. App.* 271 (61 S. E. 132).

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*