S95Y0195. IN THE MATTER OF M. McNEILL HOLLOWAY.
(469 SE2d 167)

PER CURIAM.

Respondent M. McNeill Holloway entered a plea of guilty to the felony offense of unlawful invasion of privacy.[1] He was sentenced under the First Offender Act to four years imprisonment, to be served on probation, and was ordered to pay a fine of $3,000. As a condition of probation, he was required to spend six weekends in jail, perform 300 hours of community service, and undergo psychiatric therapy. The sentencing court further ordered that Holloway surrender his license to practice law for a minimum of six months or until the State Bar of Georgia determined that the license should be reinstated.

Holloway's guilty plea was predicated upon charges that he surreptitiously used a video camera to record his secretary while she was in the bathroom of his cabin at Usry Pond, after he had fabricated a story to lure her there. It was shown that Holloway had constructed an elaborate observation area underneath the bathroom floor and had

---

[1] OCGA §§ 16-11-62; 16-11-69. Holloway was initially charged with two counts of invasion of privacy, but an order of nolle prosequi was entered with respect to the second count.

altered the bathroom cabinet to conceal himself and a video camera while he lay in wait for his victim. Sometime later, the victim inadvertently found the videotape with her initials on it and viewed it.

Holloway filed a petition for voluntary discipline in which he admitted a violation of Standard 66 of Bar Rule 4-102 (d),[2] and requested that the State Bar of Georgia "approve a period of suspension not to exceed six months to commence immediately upon the issuance of any final order. . . ." Following the procedure of Bar Rule 4-106, the Office of General Counsel petitioned this Court for appointment of a special master to conduct a show cause hearing as to why Holloway should not be disbarred from the practice of law in this state. The appointment was ordered and an evidentiary hearing was conducted.

The special master found as mitigating circumstances which militated against disbarment that Holloway's general reputation in the community is good; that he is a competent attorney; that he has had no previous criminal convictions or disciplinary complaints; that the crime did not involve illegal acts as an attorney, but as a private citizen; that he suffers from the psychiatric disorders of voyeurism, bereavement, obsessive compulsive spectrum disorder, and narcissistic personality traits; and that, according to his treating psychiatrist, the likelihood is "slight" that he would in the future pose a danger to the public. Based on those factors, the special master recommended that Holloway be suspended from the practice of law for 15 months from the date of his conviction, and that he receive a public reprimand. The State Bar filed exceptions to the special master's recommendation, contending that Holloway's conduct necessitates disbarment and that the special master failed to give appropriate weight and consideration to various factors militating in favor of disbarment, specifically that Holloway was admittedly aware of his actions when he constructed the observation area, lured his victim there, and lay in wait for her. The Bar also argues that Holloway's psychiatric disorders should not mitigate discipline.

After consideration of the record in this case, we conclude that the mitigating factors found by the special master, when considered in the context of recent disciplinary decisions of this Court, warrant a punishment less drastic than disbarment. That conviction of a felony does not by itself require disbarment is clear from our decision in *In the Matter of Witt*, 264 Ga. 852 (452 SE2d 507) (1995). To disbar Holloway because of the sexual nature of his offense would be entirely inconsistent with our decisions in *In the Matter of Yarbrough*, 264

---

[2] Under Standard 66 (a), "[c]onviction of any felony or misdemeanor involving moral turpitude shall be grounds for disbarment." The imposition of first offender probation constitutes a conviction under subsection (b) (5) of Standard 66.

Ga. 720 (450 SE2d 414) (1994), and *In the Matter of Brooks*, 264 Ga. 583 (449 SE2d 87) (1994), in both of which the Respondents were suspended. We conclude, therefore, that the appropriate sanction to impose on Holloway is suspension from the practice of law for three years, the same sanction given Brooks for multiple misdemeanor convictions and twice that given Yarbrough for a single misdemeanor conviction.

It is hereby ordered that Holloway is suspended from the practice of law in Georgia for a period of three years, commencing from the date of his suspension by the court which sentenced him. In the event his probation is revoked, he shall be suspended for such time as remains on his sentence. Holloway is reminded of his duties under Bar Rule 4-219 (c) to timely notify all clients of his inability to represent them, to take all actions necessary to protect the interests of his clients, and to certify to this Court that he has satisfied the requirements of such rule.

*Suspended. All the Justices concur, except Hunstein, Thompson and Hines, JJ., who dissent.*

SEARS, Justice, concurring.

I totally agree with Justice Hunstein's dissent that Holloway's surreptitious voyeurism constituted perverted behavior that is manifestly unacceptable for someone licensed to practice law in the State of Georgia. For such revolting behavior, this Court would be remiss if it failed to send a strong message regarding the ineluctability of imminent justice both to Holloway and the Bar at large. For such outrageous conduct, this Court also would be remiss if it failed to mete out an appropriate form of punishment to Holloway, who, as the dissent correctly emphasizes, has shown a wanton disregard for basic decency, and blatant contempt for the privacy rights of his victim.

Nonetheless, I respectfully disagree with the dissent's conclusion that this Court has adopted a policy whereby it will not disbar an attorney who is guilty of a sexual offense perpetrated against a woman. The sexual victimization of women is a topic in the forefront of today's social agenda, and I for one am overjoyed to see that the issue is receiving serious attention and is being earnestly discussed on all levels. However, my strong desire to see an end to such conduct cannot obviate my duty to evaluate each attorney disciplinary matter that comes before this Court on the basis of the particular facts attendant to each matter. My review of all of the facts relative to this disciplinary matter, and the mitigating factors as found by the special master, lead me to conclude that Holloway should be suspended from the practice of law for three years, rather than disbarred.

In this regard, I must also disagree with the dissent's somewhat cursory determination that there are no mitigating factors which war-

rant imposing a lesser form of punishment than disbarment. In addition to finding that Holloway had committed the offense of unlawful invasion of privacy, the special master who presided over the evidentiary hearing found that Holloway had an unblemished record in the community and the Bar, free of complaints. The special master also found that prior to his heinous conduct at the cabin, Holloway had an outstanding reputation in his community as to truth, veracity, and his capabilities as a lawyer, and had a long history of civic, community, and charitable service. Moreover, the special master reported that, following his arrest, Holloway immediately sought out professional counseling, and was contrite and remorseful over his crime. Finally, the special master noted that Holloway's crime did not involve illegal acts committed as an attorney, but rather as a private citizen, and that Holloway never neglected his professional duties to his clients.

I believe that our function in this case should be to dispense justice in a firm yet appropriate manner, and that we should not use our great power to inflict a punishment greater than that which is required to serve our purposes.[3] In so doing, we cannot evaluate Holloway's character and fitness to practice law on the basis of this single, albeit reprehensible, offense. More than most offenders, Holloway's history indicates that he is capable of redeeming himself socially and professionally. Furthermore, Holloway's gross infraction did not directly involve his duties as an attorney. Moreover, Holloway's conduct was clearly that of an unbalanced and deranged individual, and it is very appropriate that he has sought out professional counseling. In light of these highly pertinent factors, while I find it a very close call indeed, I shall opt for a punishment which graces Holloway with an opportunity to redeem himself, rather than one which totally banishes him from the profession.

Finally, I am at a loss as to how this case can be distinguished from the rulings of this Court in *In the Matter of Brooks*[4] and *In the Matter of Yarbrough*.[5] Both of those cases involved disciplinary proceedings against members of the Bar, one of whom was a sitting judge, who had committed sexual battery involving the actual *nonconsensual sexual touching of a woman victim*. As bereft of all reason as Holloway's conduct was, I cannot say that it was more offensive than the conduct engaged in by the offenders in *Brooks* and *Yarbrough*, both of whom were suspended from the practice of law for three years. Consequently, I cannot adhere to the distinction implied by the dissent between misdemeanors in those two cases and the felony in this case. Were this Court to disbar Holloway, I would be

---

[3] See *Colbert v. State*, 91 Ga. 705, 711 (17 SE 840) (1893).
[4] 264 Ga. 583 (449 SE2d 87) (1994).
[5] 264 Ga. 720 (450 SE2d 414) (1994).

greatly troubled by the disparity between that punishment and the ones inflicted in *Brooks* and *Yarbrough*. The law must be firm and constant, regardless of the personally offensive features of a particular matter.[6] We cannot dispense "one law for Rome and another for Athens, one thing today and another tomorrow."[7] Accordingly, I concur in the ruling of the majority opinion.

HUNSTEIN, Justice, dissenting.

The majority's opinion can only confirm the fact that the Georgia Supreme Court will not disbar a lawyer for committing a criminal offense of a sexual nature against an adult woman. The pattern is now firmly established: A sitting judge sexually batters five women over a twenty-three-month period — the Supreme Court suspends him for three years. *In the Matter of Brooks*, 264 Ga. 583 (449 SE2d 87) (1994) (Hunstein and Thompson, JJ., dissenting). A lawyer sexually batters a new client who has come to him for legal help — the Supreme Court suspends him for 18 months. *In the Matter of Yarbrough*, 264 Ga. 720 (450 SE2d 414) (1994) (Hunstein, J., dissenting). A lawyer invades the privacy of his secretary by videotaping her while using the bathroom, conduct so offensive that the Legislature made it a felony — the Supreme Court suspends him for three years. Majority opinion, p. 601.

To be sure, this Court does not always disbar lawyers for Standard 66 violations. There are rare cases, 14 out of 93, where we have not disbarred or accepted the lawyer's voluntary surrender of license. An examination of these exceptional cases shows that they fall into two broad categories: lawyers whose lives have been devastated by drug and alcohol addictions and lawyers who have engaged in that all-too-American pastime of cheating Uncle Sam. To these categories the Bar can now add a third: lawyers who victimize women.

There are no words in the majority opinion explicitly approving the victimization of women by lawyers. But such words are not necessary: it is actions that speak most loudly here and the message is clear and unmistakable: the court will not disbar a lawyer for committing a criminal offense of a sexual nature against women. It does not matter whether the lawyer's victim is client or employee, it does not matter whether the lawyer preys on one woman or five, whether there is physical contact or premeditated plotting, it does not even matter whether the lawyer's crime is a misdemeanor or a felony. Sex crimes against women are all on one level. Like cocaine addicts and tax evad-

---

[6] *Southern Star Lightning Rod v. Duvall*, 64 Ga. 263, 266 (1879); see *Christensen v. State*, 266 Ga. 474 (468 SE2d 188) (1996) (Sears, J., dissenting).

[7] Cicero, The Commonwealth (cited in *Standard Oil Co. v. Harris*, 120 Ga. App. 768, 770 (172 SE2d 344) (1969)).

ers, lawyers who commit sex crimes against women will be accorded special treatment by this Court. No, there are no words in the majority opinion explicitly approving the victimization of women by lawyers: the majority has no need for such words when its very actions are sufficient to convey that message.

The majority opinion, by justifying its inadequate punishment by relying on *Brooks* and *Yarbrough,* supra, has solidified this Court's approach toward lawyers who victimize women. The majority has created a glass ceiling on punishment by grouping these sex crimes into one amorphous category. And for mitigation evidence: the fact that the lawyer is a sex pervert and has knowingly and deliberately violated laws he swore to uphold will not matter if the lawyer is competent in his practice, victimizes only employees (but see *Yarbrough,* supra), and has kept the general public in ignorance of his criminal activities.

The majority opinion propagates an environment where lawyers know they can target women and can be convicted of sex crimes against women without any fear whatsoever of losing their licenses to practice law in this State.

This Court held, in its opinion disbarring J. B. Stoner, that if the law is to be respected, the public must be able to respect the individuals who administer it. *In the Matter of Stoner,* 246 Ga. 581, 582 (1) (272 SE2d 313) (1980). It follows that if the law is to be respected, the public must be able to respect the body that regulates those individuals. A three-year suspension for a lawyer with a felony conviction does not foster public respect for the law or this Court. Because disbarment is the only appropriate disciplinary sanction for M. McNeill Holloway, I dissent.

THOMPSON, Justice, dissenting.

The facts clearly demonstrate that the Respondent intentionally engaged in felonious conduct involving dishonesty, fraud, deceit and misrepresentation that seriously adversely reflects on his fitness to practice law. Because I do not agree that mitigating circumstances override his misconduct, I believe that the appropriate sanction is disbarment. I respectfully dissent.

I am authorized to state that Justice Hines joins in this dissent.

DECIDED APRIL 29, 1996.

*William P. Smith III, General Counsel State Bar, E. Duane Cooper, Assistant General Counsel State Bar,* for State Bar of Georgia.