## 3579.  PELHAM & HAVANA RAILROAD COMPANY v. ELLIOTT.

1. Under the rulings of the Supreme Court, if a witness has been impeached, it is the duty of the jury to disregard his testimony, unless corroborated in material particulars. *Powell* v. *State,* 101 *Ga.* 10 (5a), 19 (29 S. E. 309, 65 Am. St. Rep. 277). It is therefore error, in a case in which the determination of the issue depends almost entirely upon the credibility of a witness whom it is sought to impeach, to refuse a request that section 5884 of the Civil Code (1910) be given in charge to the jury, the request being in the exact language of that section.
2. A new trial should not be granted for an irregularity as to the separation of the jury, which was known to counsel at the time and yet was not brought to the attention of the court until after the verdict.
3. Extension of the time allowed to counsel for argument, where there is no express rule upon the subject, is a matter addressed to the sound discretion of the trial judge, and his discretion will not be controlled unless it is manifestly abused.
4. "Side bar" remarks and irregular comments of counsel, during the course of a trial, can not be approved as conducive to the decorum of the courts, but they will not be held by a reviewing court to be cause for a new trial, unless it is manifest that the conduct or remarks of counsel were necessarily prejudicial to the opposite party, and that the trial judge abused his discretion in not applying sufficiently drastic measures to remove their injurious effect and to enforce order.
5. It is illegal and highly prejudicial to a fair and just administration of the rights of the parties for counsel, in addressing the jury, to comment upon matters not proved and not growing out of the pleadings. It is the duty of the trial judge to prevent such comments, and he should at least, upon a timely and appropriate request of the party likely to be prejudiced thereby, direct the attention of the jury to the impropriety of the argument and caution them against it. If statements of fact, or comments, unjustified by the evidence, are made by counsel, and it is apparent that the impropriety may be prejudicial to the opposite party, and yet the court takes no action to apply any corrective measure, though requested to do so, a new trial will be granted.

DECIDED OCTOBER 4, 1912.

Action for damages; from city court of Cairo—Judge Singletary. June 15, 1911.

*R. C. Bell, Lane & Park,* for plaintiff in error.
*Smith, Hastings & Ransom, W. J. Willie,* contra.

RUSSELL, J.  A. C. Elliott brought suit against the Pelham & Havana Railroad Company, alleging, that while in the discharge of his duty as a conductor on one of the company's trains on December 3, 1909, he was compelled to ride on the top of a car, because there was no caboose; that the car became derailed, and

turned over, throwing him from the top of the car to the ground, wrenching his ankle and knee, and tearing and bruising the muscles and nerves of his spine; that his capacity to labor was thereby entirely destroyed, and that he had suffered and always would suffer great pain; that he was 37 years old, and was earning $600 per year at the time of his injury. The defendant denied that it was operating a railroad at the time of the injury,—admitting only that its proposed railroad was in process of construction,—and further denied the allegations of negligence, and all other allegations of the petition. The trial of the case resulted in a verdict for $6,000, and the defendant excepted to the refusal of a new trial.

Some of the assignments of error do not present any sufficient reason for the grant of a new trial; some of the requests to charge were properly refused, because they were imperfect and defective; the instructions requested in some of the requests, to the refusal of which exception is taken, were presented, not in the language requested, it is true, but in the judge's own language, in substantial compliance with the requests. There are a number of exceptions predicated upon the conduct of the judge in failing to prevent certain incidents of the trial, which, it is claimed, prejudiced the defendant's case before the jury, and which were objected to at the time, and several assignments of error predicated upon instructions to the jury which it is insisted were erroneous; but we do not think that any of the above-mentioned assignments of error present sufficient cause to authorize a reversal of the judgment refusing a new trial. Disregarding, however, all those assignments of error which we deem to be immaterial, and ignoring those which are without merit, it is our deliberate opinion that upon three grounds of the motion for new trial a new trial is required, if we follow, as we are bound to follow, the previous adjudications of the Supreme Court, as well as of this court.

1. It is with the utmost reluctance that we set aside the verdict of the jury in any case where there is evidence to authorize it; and this court has not ordered and will not order the grant of a new trial in any case where the trial has been free from substantial error, or even in a case where error has been committed, if the error is not likely to have affected the result, where there is, as in this case, enough evidence to support the finding of the jury. But in a case where the verdict rendered is not the only verdict that

could have been reached under the evidence submitted, and it appears that there were errors in the trial which may have affected the result, and especially where, in a close case, all those errors may have tended to influence the jury to believe the witness for one party rather than the testimony for the other party, our duty requires that a new trial be granted, in order that the guarantee that every person shall have a fair trial shall be made effectual. Pretermitting for the present any discussion as to whether the defendant sustained its contention that it was only in the process of construction and had not become a common carrier, it is manifest, upon a review of the evidence, that the case turned upon whether the injuries from which the plaintiff claimed to suffer were received as a result of negligence of the defendant, or whether his suffering was not caused by injuries received prior to his employment by the defendant. Another controlling issue was whether the injury was due to the negligence of the defendant or the negligence of the plaintiff. The controlling issues were largely dependent upon the credibility of the plaintiff himself. An effort was made to impeach him by proof of contradictory statements, and a proper request to charge the jury upon the subject of impeachment was refused by the court. The court further certifies that the jury were not instructed upon the subject at all. It is well settled, of course, that in the absence of a request, a judge is not required to charge the jury upon the law as to the impeachment of witnesses, but it is no less well settled that to refuse an appropriate request upon the subject is error.

Though in some cases the refusal of a request that the jury be properly instructed as to the law with relation to the impeachment of witnesses, while error, might not require the grant of a new trial, the question as to whether the failure to charge upon the subject is or is not error must always be determined by the importance of the testimony to the issue, as well as its materiality. In the case at bar the testimony of the plaintiff was most material, and the success or failure of the defendant in discrediting the plaintiff's testimony before the jury was of as vital importance to the defendant as that the jury should believe it was essential to the plaintiff. Though it is usually unimportant that the attention of an intelligent jury be directed to circumstances that may have affected the credibility of a witness who has testified in the case, yet in such a

case as the one now before us, where the credibility of the witness as to the very vitals of the case is attacked, not only by testimony denying the facts to which he testifies, but by an attempt to show that his character is such that he is not worthy of belief, it may be a substantial right (and frequently is) to have the court call the attention of the jury to the impeaching testimony and instruct them as to the effect they must legally give it, in case they believe the testimony introduced for the purpose of impeachment is true. It is true the law leaves it in every case to a party to say how important he considers it to be to his case that the jury shall be instructed as to the rules governing the consideration of such testimony, and its effect upon the case; and for that reason, therefore, it is not error for the judge to omit to refer to the subject if he is not requested to do so. But if a party considers it material, he can not be deprived of the right to have the jury properly instructed upon this branch of the law merely because he may at his option exercise the right or decline to avail himself of it.

Even if the jury believes the testimony of previous contradictory statements, relating to matters material to the issue, and even though the proof of these contradictory statements may impeach the witness to the satisfaction of the jury, they may overlook their right to disregard his testimony entirely, if they are satisfied that he swore wilfully and knowingly falsely. For this reason the court should have charged the jury as requested, that, "when a witness is successfully contradicted as to a material matter, his credit as to other matters is for the jury; but if a witness swear wilfully and knowingly falsely, his testimony ought to be disregarded entirely, unless corroborated by circumstances, or other unimpeached evidence. It is for the jury to determine the credit to be given the testimony where impeached for general bad character or for contradictory statements out of court." The instruction requested was in the very language of section 5884 of the Civil Code of 1910, and, under our view of it, the principle was not inapplicable for any of the reasons stated by the learned counsel for the defendant in error. This section of the code may be subject to the criticism suggested by Prof. Wigmore (2 Wigmore on Evidence, § 1111), but the only point which we can consider is the applicability of the section, for it is the duty of the courts to enforce the law as they find it; and, until repealed, this section is a part of the law. *Powell*

v. *State*, 101 *Ga.* 10 (5*a*), 19 (29 S. E. 309, 65 Am. St. Rep. 277) ; *Harris* v. *State*, 1 *Ga. App.* 136 (3), 138 (57 S. E. 937) ; *Southern Ry. Co.* v. *Peek*, 6. *Ga. App.* 43 (64 S. E. 308) ; *McCullough* v. *Sawtell*, 134 *Ga.* 512 (3), 515 (68 S. E. 89) ; *Rouse* v. *State*, 136 *Ga.* 356 (4), 361 (71 S. E. 667).

2. Exception is taken to the court's permitting the jury to disperse and remain separate during the night, while the case was in progress and after a considerable portion of the evidence had been submitted, without consent of the defendant's counsel and without cautioning the jury or giving them any instruction whatever in regard to the consideration of the case by them, or the making up of their minds upon the same, and without cautioning them not to talk with or accept any courtesies from any one connected with the case; the jury being dismissed without any instructions, caution, or reference of any kind whatsoever. It is insisted that this was especially prejudicial because the trial of the case attracted attention in the city court of Cairo; the court-room was crowded, and the case was almost the sole topic of conversation about the hotel and on the streets of the city. This ground of the motion is not fully approved by the trial judge, and hence could not be considered. But in no event should a new trial be granted for an irregularity as to the separation of the jury, which was known at the time to the counsel for the defendant and yet was not brought to the attention of the court until after the verdict. *Riggins* v. *Brown*, 12 *Ga.* 272; *Waller* v. *State*, 2 *Ga. App.* 636 (58 S. E. 1106).

3. Error is assigned because the court allowed Hon. Hoke Smith, counsel for the plaintiff, in his concluding argument to the jury, over the written protest of defendant's counsel, to speak several minutes beyond the time allowed by the rules of the court for argument, no additional time having been asked for. It is alleged that the court erred in refusing to grant a mistrial because of this additional allowance of time, and that "it was particularly hurtful to the defendant because of the great personal influence of said counsel, and the position occupied by him as Governor-elect of the State of Georgia, and because the court-room was crowded with the friends, admirers, and political supporters of the counsel, who constantly manifested the greatest interest in and approval of his argument, which could not but be observed by the jury," and,

movant insists, influenced them against the defendant. To this ground the court gives only qualified approval, by certifying that the plaintiff's counsel did speak several minutes longer than counsel for the defendant, and adds that under the practice in the city court of Cairo, argument of counsel is not limited, and counsel are permitted to argue as long as they please. The court further certifies that if there was any interest manifested in the argument of counsel or approval thereof, the court's attention was not called to it by movant's counsel. Under this qualifying note, nothing is left for us to pass upon but the fact that counsel for one of the parties spoke longer than the other, and that the court declined to grant a mistrial for this. We certainly could not hold that this was error, or that, under the circumstances as they really occurred, and as certified to by the judge, there was any abuse of his discretion. There are occasions where the circumstances require the judge to intervene ex mero motu and stop conduct or language in the presence of the jury which may be prejudicial to the rights of the litigant or derogatory to the dignity of the court, but such matters as are referred to in the present assignment of error can not properly be made ground for exception, unless the attention of the court is called to them at the time. We do not think that the mere fact that counsel exceeds the limit of time allowed by law for argument would ordinarily be good ground for mistrial, for if time is the only thing the counsel is consuming, he will be more apt to benefit the opposite party, by wearying the jury and thus prejudicing them against his own client, than otherwise.

4. The practice of indulging in "side-bar" remarks is not to be approved. The trial judge should do everything in his power to maintain the decorum of his court and advance justice by orderly procedure. However, irregular comments of counsel during the course of trial will not be held by the reviewing court to be error, unless it is manifest that the trial judge abused his discretion, in not applying sufficiently drastic measures to enforce order, in a case where it is plain that the conduct or remarks of counsel can not fail to be prejudicial.

5. In the 15th ground of the amended motion for a new trial complaint is made that the leading counsel for the plaintiff in the lower court, Hon. Hoke Smith, who was then Governor-elect of the State of Georgia, in his concluding argument, referred to his

previous knowledge of the plaintiff in the city of Atlanta, when the plaintiff was a street-car conductor in that city, and stated that he believed in the plaintiff, knew that he was injured, believed in his testimony, and believed he was injured to the full extent he claimed. The defendant's counsel objected to these statements and requested the court to charge the jury that they must try the case on the evidence, and not on the personal belief of counsel. The court declined to do this, and did not even caution the jury in regard to the statements of belief by the plaintiff's counsel. In the instructions of the court to the jury there is no reference to the matter, and it does not appear that the remarks to which objection was made were withdrawn or explained. If the question presented were a new one, we should not be inclined to consider that the exception presented a good ground for a new trial in a case in which the evidence would authorize the result reached by the jury, and we would not feel justified in setting aside their verdict merely because of counsel's expressions of his belief. If the question were here presented for the first time, we would unhesitatingly declare our confidence in the ability of a jury of ordinary intelligence to disregard improper argument, and their ability to place their finding upon the facts derived from the sworn testimony of the witness and the law as it should be given them in charge by the court. But the question before us is not a new one in Georgia, and the only duty which devolves upon us is to determine whether the argument complained of falls within the well-settled rule, for the infraction of which the grant of a new trial is mandatory, and to inquire whether there is anything in the circumstances of the present case, as they are set before us by the record, which so distinguish it from the cases heretofore adjudicated that we can truthfully say it is not within the general rule. It may be said, in passing, that the statement, which appears more than once in the motion for new trial, that the distinguished counsel was at the time "Governor-elect of the State of Georgia," has no other bearing than that the effect of improper argument, or of counsel testifying in argument, is always more damaging in proportion to the admitted character and standing of the counsel. A remark or argument from an insignificant barrister might be highly improper and illegal, and yet, as a matter of fact, be but little prejudicial or entirely harmless in its effect, while the same remark from one whose learning, char-

acter, and ability make him a tower of strength could not be lightly turned aside, and might work untold injury to its object. The statements made by the counsel in the present case must be admitted to trench more largely on the province of a witness than the remarks of counsel in *Dougherty* v. *Georgia Railway & Electric Co.,* 4 *Ga. App.* 614 (62 S. E. 158) ; but the rule is an old one. Without deciding the question in finality, the Supreme Court, in *Berry* v. *State,* 10 *Ga.* 511, condemned the practice. In *Mitchum* v. *State,* 11 *Ga.* 616, the court proceeded to deal with the question at length, and to lay down a definite rule, which has been followed ever since. In view of our personal opinion, as well as of the importance of the matter to the profession, we deem it not inappropriate to quote, in extenso, the reasons of Judge Nisbet:

"We have had occasion to consider the habit of counsel, in addressing the jury, of commenting upon matters not proven and not growing out of the pleadings before, and have been content with visiting it with a decided and emphatic disapproval. *Berry* v. *The State,* 10 *Ga.* 522, 523. We entertain no shadow of doubt as to the necessity of pronouncing it, as we now do, illegal and highly prejudicial to a fair and just administration of the rights of parties, either on the criminal or civil side of the court. It is the duty of the court to prevent such comments, and in all cases where this is not done, provided the court is requested to prevent them, we shall hold, as we rule in this case, that it is good ground for new trial. There was, it is true, some excuse for the license conceded the solicitor-general in this case, in the fact that the counsel for the prisoner had already taken the same liberty in his argument to the jury. The solicitor-general, no doubt, felt called upon, by the obligations of his office, to remove any wrong impression which the argument of counsel for the prisoner had made as to the credibility of the witness. Disregarding, however, these things, we have no option but to make this case the occasion of establishing a rule upon this subject. In doing this, I am sure that it is scarcely necessary to say that we disclaim any purpose of inflicting a personal censure upon the able and upright judge who presided in the cause, or upon the counsel and the prosecuting officer. If no other reason existed for this disclaimer (and there are many), sufficient reason would be found in the usage of our courts, which has gone very far to sanction the habit referred to.

Its practical tendency is bad upon the court, the bar, and the jury. If this were all, perhaps our duty would stop with the expression of such an opinion; but this is not all—for in our judgment it is violative of the rights of the citizen litigant in the courts of justice; and if so, we are not at liberty to stop short of making it cause for a new trial. It is not foreign to the subject to say that it is the duty of counsel to guard, by the most scrupulous propriety of de- meanor, in the conduct of a cause, the dignity and honor of the profession. Connected as it is, most intimately, with the adminis- tration of justice, it should be protected most vigilantly from fall- ing into popular disrepute. It ought, as I verily believe it does, to command the respect of the wise, and the reverence of the good. Power and place—hereditary wealth—stupidity in high social posi- tion, and even genius, pandering to a popular taste for caricature, jealous of the power which it wields upon governments, have la- bored to degrade it. Still in this country and in England, if no- where else, the bar is the ladder upon which men mount to dis- tinction; the lawyer is the champion of popular rights; the class to which he belongs is more influential than any other; and counsel, yes, feed counsel, is indispensable to a fair and full administration of justice. When learning and character, and practised skill, and eloquence, and enthusiasm, chastened by discretion, are enlisted in behalf of the litigant, he may rest assured that he holds in his counsel the very best guarantee against all forms of wrong and oppression in the administration of the law. It is true that he is paid for his services—and what of that? Are not princes and premiers, presidents and priests also paid? One thing never yet was bought with money, and that is the soul-engrossing identifica- tion of counsel with his client. It is the gratuitous bestowal of his sympathy, drawing forth the masterly powers of his genius and the rich treasures of his learning, that makes the great lawyer, the honored and influential citizen. The approval of conscience and the respect of good men are his reward; far richer than the stipu- lated fee of these days, or the honorarium of the Roman advocate. If I thus magnify the office of the counsel, it is for the purpose of saying that its very importance makes indispensable the exclusion of the habit which we now condemn. But I proceed, claiming the indulgence on account of these general remarks, of the critical pro- fessional reader, to test the rule we lay down by strictly legal con-

siderations. That rule is, that it is contrary to law for counsel to comment upon facts not proven. He represents his client—he is the substitute of his client; whatever the client may do in the conduct of his cause, therefore, his counsel may do. In relation to his liberty of speech, the largest and most liberal freedom is allowed, and the law protects him in it. The right of discussing the merits of his cause, both as to the law and the facts, is indispensable to every party; the same right appertains to his counsel. The range of discussion is wide—very wide. He is entitled to be heard in argument upon every question of law that may arise in the cause; in his addresses to the jury it [is] his right to descant upon the facts proven or admitted in the pleadings; to arraign the conduct of parties; impugn, excuse, justify, or condemn motives, so far as they are developed in evidence; assail the credibility of witnesses, when that is impeached by direct evidence, or by the inconsistency or incoherence of his testimony, his manner of testifying, his appearance, or by circumstances. His illustrations may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination. To his freedom of speech, however, there are some limitations. . . It has been found difficult to prescribe a legal limitation to the lawyer's liberty of speech in the performance of his duties in a cause. That the discussions should be *free* is perfectly obvious; and even abuses should be tolerated, rather than a privilege so valuable should be abridged. We feel the delicacy of the ground upon which we tread, and are solicitous of being understood as carrying our present ruling no farther than to cover the precise question made in the assignment. . . Statements of facts not proven, and comments thereon, are outside of a cause; they stand legally irrelevant to the matter in question, and are therefore not pertinent. If not pertinent, they are not within the privilege of counsel. . . Trial by jury! How imperfect a privilege would that be, if the forms of law were abandoned—if the rules of evidence were disregarded! An essential element in the trial by jury is that their verdict shall be rendered according to the facts of the case, legally produced to them. They are sworn to give their verdicts according to *evidence,* and if they find without evidence, or against evidence, a new trial will be granted. They can not even render a verdict upon knowl-

edge within their own breasts; but if a juryman has knowledge of facts pertinent to the issue, he may be sworn. The law, with great carefulness, prescribes rules by which facts are to be submitted to the jury. Testimony must be relevant—the best evidence the nature of the case admits must be produced; hearsay is excluded; interest in the witness will disqualify &c.; and by our own constitution, in criminal cases the witnesses are to be confronted with the prisoner. He has in all cases the right of cross-examination. All these and many more rules are prescribed for the ascertainment of the truth of those facts upon which verdicts are to be rendered. The law to be administered may depend upon the facts proven. Ex facto oritur jus. 'And if the fact,' writes Blackstone, 'is perverted or misrepresented, the law which arises from thence will unavoidably be unjust or partial; and in order to prevent this, it is necessary to set right the fact, and establish the truth contended for, by appealing to some mode of probation or trial, which the law of the country has ordained for a criterion of truth and falsehood.' 3 Black. Com. 330. When counsel are permitted to state facts in argument and to comment upon them, the usage of the courts regulating trials is departed from, the laws of evidence are violated, and the full benefit of trial by jury is therefore denied. It may be said in answer to these views, that the statements of counsel are not evidence; that the court is bound so to instruct the jury, and that they are sworn to render a verdict only according to the evidence. Whilst all this is true, yet the effect is to bring the statements of counsel to bear upon the verdict with more or less force, according to circumstances; and if they in any degree influence the finding, the law is violated, and the purity and impartiality of the trial are tarnished and weakened. If not evidence, then without doubt the jury have nothing to do with them, and the lawyer no right to make them. And just here the argument might be rested. It is not reasonable to believe that the jury will disregard them. They may struggle to disregard them; they may think that they do disregard them, and still be led involuntarily to shape their verdict under their influence. That influence will be greater or less, according to the character of counsel, his skill and adroitness in argument, and the naturalness with which the statements stand connected with other facts and circumstances in the case. To an extent not definable, yet to a dangerous.

extent, they are evidence, not given under oath—without cross-examination, and irrespective of all those precautionary rules by which competency is tested.

"In this case the statements and comments had reference to the character and credibility of the witness. I know of no rule of law which authorizes the credibility of a witness to be impeached or fortified thus. The manner of attacking or defending the character of a witness is fixed by law; and fixed, among other things, that:. he may not be subject to irregular and irresponsible assaults upon his veracity and fairness. He, as well as parties and counsel, has rights, which it is the duty of the court to protect. It were a cruel injustice to permit his character to be driven to and fro like the shuttlecock, by outside statements of counsel. Where shall the license stop? If allowed against the credibility of a witness, then with equal reason they are to be allowed as touching the merits of the issue. If crimination is granted, recrimination can not be refused. If statements on one side are permitted, counter-statements on the other can not be denied. If allowed to men of the highest honor, they can not be denied to those few to be found in all professions, destitute of all honorable principle. The concession, carried out in its legitimate consequences, would convert the stern, inflexible law and order of a court of justice, into confusion, uncertainty and injustice."

<em>Judgment reversed. Pottle, J., not presiding.</em>