## 48008. ESTEP v. THE STATE.

CLARK, Judge. This appeal from a burglary conviction contains twenty specifications of error. In dealing seriatim with them we will discuss the specific subject involved by prefacing each with the question presented for decision.

1. *Were the grand and traverse juries of Coweta County constitutionally composed and were they in accordance with the laws of Georgia?* (Enumerations of error 1 through 11). Accused challenged the local list of the grand jury and petit jury contending there was an unconstitutional, systematic exclusion of blacks, women, and young adults between the ages of 18 and 30. A considerable portion of appellant's briefs dealt with these eleven enumerations. Included are impressive, detailed charts and graphs showing percentages of alleged under-representation of these three groups. The brief also includes a scholarly study showing how our American courts have handled compliance with the Magna Carta concept that each individual is entitled to a jury of his peers with particular emphasis on those U. S. Supreme Court decisions of recent vintage that have wrought substantial changes in the composition of our juries.

These identical enumerations of error were presented by appellant's counsel in the Supreme Court of Georgia in a case pending there at the time the instant appeal was docketed. Appellant's brief in this court noted that fact with a recognition that a decision in the pending Supreme Court case adverse to his contentions would preclude our ruling in his favor on the identical questions. This is in conformity with the State Constitutional Amendment ratified in 1906 creating the Court of Appeals of Georgia which expressly required this court to recognize the decisions of the Supreme Court as binding precedents. Const. Art. VI, Sec. II, Par. VIII (Code Ann. § 2-3708). That prior case was decided March 15, 1973, the opinion being *White v. State,* 230 Ga. 327 (196 SE2d 849). All of appellant's challenges to the jury system were there overruled.

Thereupon appellant's counsel filed a supplemental brief with us seeking to distinguish the instant case from the Georgia Supreme Court ruling. In this supplemental brief it was argued our court should independently follow the decisions of the U. S. Supreme Court despite the Georgia Supreme Court's rendition of a subsequent contrary decision citing *Thornton v. Lane,* 11 Ga. 459, 500; *Aycock v. Martin,* 37 Ga. 124, 135; *Wrought Iron Co. v. Johnson,* 84 Ga. 754, 759 (11 SE 233); and *R. M. Rose Co. v. State,* 133 Ga. 353 (65 SE 770, 36 LRA(NS) 443). When we compared the briefs filed by appellant's counsel in our two appellate courts we found them to be identical in the manner in which these jury challenges were argued. Under these circumstances we consider it our obligation to recognize the necessity of conforming to the

decisions made by our State Supreme Court.

Additionally, appellant's counsel's supplemental brief contends that the decision of the U. S. Supreme Court in Alexander v. Louisiana, 405 U. S. 625 (92 SC 1221, 31 LE2d 536), is controlling in our case. Although this citation is not contained in the Georgia Supreme Court opinion our review of appellant's brief in the *White* case on file with the clerk of the Supreme Court shows that Alexander v. Louisiana was there cited at pages 19, 26 and 33. Moreover, the *White* rehearing motion urged upon our Georgia Supreme Court Justices that their opinion had overlooked "the controlling decision" of Alexander v. Louisiana. Under these circumstances we cannot accept Alexander v. Louisiana as binding us to rule contrary to the decision rendered in *White v. State,* 230 Ga. 327, supra. (The record there indicates also that *White* has now sought to have his Georgia Supreme Court case reviewed by the Supreme Court of the United States.)[1]

Finally, the supplemental brief argues a factual difference to exist in that the *White* case was first tried in March 1972 with a mistrial and re-tried last in September of that year whereas appellant Estep was not tried until December 1972. We cannot accept the contention that this difference in time put the jury commission of Coweta County on notice for a sufficient length of time to know that the grand and traverse juries were unconstitutionally composed and did not fairly reflect a representative cross section of the community eligible for service upon the grand and traverse juries because in December 1972 there had not yet been a Supreme Court decision on the appellant's contention in the *White* case.

We hold the binding precedent of *White v. State,* 230 Ga. 327, supra, to be a determination adverse to appellant of his first eleven assignments of error.

2. *Was there a fatal error in that the probata did not follow the allegata because the indictment charged accused with burglarizing a "store house" when the evidence showed the building was not a shop or store but a "storage house"?* (Enumerations of error 12 and 18). Appellant's contention is that

---

[1] On October 15, 1973, by a 6 to 3 vote the U. S. Supreme Court dismissed the appeal "for want of a substantial federal question." Justice Brennan wrote a vigorous dissent concurred in by Justices Douglas and Marshall.

the decisions of *Coleman v. State,* 61 Ga. App. 658 (7 SE2d 212) and *Mash v. State,* 90 Ga. App. 322 (82 SE2d 881) define a storehouse as meaning a place where goods are stored or kept for sale at retail or wholesale such as a shop or store. Those cases construed that word because it was used in our former statute stating the elements then constituting the crime of burglary. This was formerly Code § 26-2401 and in part reads: "Burglary is the breaking and entering into the dwelling, mansion, or storehouse, or other place of business of another where valuable goods, wares, products, or any other article of value are contained or stored, with intent to commit a felony or larceny." When our new Criminal Code was adopted in 1968 the definition of burglary was changed and the words "dwelling, mansion, or storehouse" not used. Instead the new statutory definition of burglary (Code Ann. § 26-1601) uses the all-inclusive word of "building." This includes a "store house" as well as a "storehouse."

It should be noted that the indictment did not use the single word "storehouse" as was in the former statute but used two words, viz. "store house." The use of these two words indicated the building to have been used for storage purposes and thus gave sufficient notice to defendant as to the nature of the accusation. Accordingly, the trial judge was correct in refusing to charge the requests based upon the single word "storehouse" as used in the former statute. The evidence did follow the indictment. There is no error here.

3. *Did the court's refusal to allow appellant to use an unofficial professional court reporter at his expense to transcribe the hearings and trial for appellant's personal use amount to a denial of due process and right to counsel as guaranteed by the fourteenth and sixth amendments of the U. S. Constitution?* (Enumeration of error 13). In undertaking to answer this question we are reminded of the view expressed by the legendary Logan Bleckley in *Colbert v. State,* 91 Ga. 705, 711 (17 SE 840): "We trust our upright and able brother of the circuit bench will believe that we, like himself, act from conscientious views of duty, and in no spirit of censure or criticism, official or personal. We should deem ourselves unworthy to preside in this high tribunal if either the wish to offend, or the fear of offending, could mix with the motives of our judicial conduct." The members of this division regard it as incumbent upon us to suggest to the trial bench that a request by an attorney for

personal use of a professional court reporter in addition to the official court reporter should generally be granted. We recognize that "the trial court has a broad discretion in regulating and controlling the business of the court, and the appellate court should never interfere with its exercise unless it is made to appear that wrong or oppression results from its abuse, or the court in some manner takes away rights the parties have under the law." *Hopkins v. Allen,* 123 Ga. App. 330 (180 SE2d 919). We also know the trial judge has the final say-so as to the correctness of a transcript of evidence. Code Ann. § 24-3105. (In this connection see *Camp v. Curry-Arrington Co.,* 46 Ga. App. 17 (166 SE 428) as to the procedure where there is a disagreement between counsel and court as to the correctness of a transcript.)

Nevertheless, request by an attorney for permission to have the proceedings transcribed by an unofficial professional court reporter in addition to the official court reporter should normally be granted. In many trials it is necessary for the advocate in fulfilling his obligation to his client to obtain daily transcripts. Appellant's attorney here did not question the right of the circuit court judge to appoint a court reporter. Code § 24-3101. Nor did he question the accuracy of the official court reporter. His reasons were based upon his expressed belief that representation of the client necessitated his use of an additional personal court reporter.

In the present instance, however, we find that the appellant was not deprived of his constitutional rights to a fair trial through denial of the request. The case was not so complicated that the advocate would have need of an immediate transcript. The official court reporter filed both the transcript of the hearing held on December 7, 1972, and the transcript of the trial held December 12, 1972, on January 9, 1973. Furthermore, appellant's counsel has not pointed to any factor that would indicate his client sustained any harm by the court's denial of his request. "Injury as well as error must be shown before a new trial will be granted." *Christian v. State,* 41 Ga. App. 565, 566 (153 SE 780); *Brooks v. State,* 125 Ga. App. 867, 869 (189 SE2d 448).

4. *Did the trial court err in refusing to strike unresponsive answers of a witness which appellant contends injected prejudicial, irrelevant testimony that deprived appellant of a fair trial?* (Enumeration of error 14). The prosecuting witness who had apprehended the accused flagrante delicto at his country place

was asked on direct examination, "Tell the jury what you saw him (the defendant) doing that day, please sir?" By coincidence the witness was a lawyer. Typical of members of our profession when testifying he proceeded to detail his personal activities without compliance with the laws of evidence. During this discourse (T. 29, 30, 31) a number of objections were interposed including a motion that the extraneous matter should be stricken because of being allegedly prejudicial. We have read the testimony of this witness and find no illegal prejudicial material to have been presented even though the information was not directly responsive.

5. *Was the grand jury improperly empaneled?* (Enumeration 15). A plea in abatement to the indictment was filed which characterized one member of the grand jury to have been an interloper in that his name, "Cliff B. Glover, III," was not on the list of grand jurors certified by the jury commission. Where this fact is shown to be true then the plea in abatement should be sustained. *Bazemore v. State,* 28 Ga. App. 556 (112 SE 160). This did not exist here. The grand jury list showed this individual's name as "Cliff B. Glover, III." At the hearing his testimony was that he lived with his father Clifford B. Glover and that at birth he had been named Clifford B. Glover, Jr. but due to confusion within his family he legally changed his name to Clifford B. Glover, III. He testified he was the same individual known as Cliff B. Glover, III, the name contained on the grand jury list and on the indictment. In a similar case involving nomenclature similarities, *Turner v. State,* 78 Ga. 174 (a), the Supreme Court ruled denial of abatement was proper.

6. *Did the trial court commit reversible error by allowing the jurors to disperse?* (Enumeration of error 16). Prior to July 1, 1972, a defendant had the right to have the jurors kept together in a body during the entire trial. *Buttersworth v. State,* 200 Ga. 13 (1) (36 SE2d 301). This requirement was changed to permit the judge to exercise his discretion as to jury dispersal except in capital cases. Code Ann. § 59-718.1 This same point was decided adversely to appellant's contention in *White v. State,* 230 Ga. 327, 340, supra.

7. *Was it error to overrule the motion to dismiss the indictment because it contained a list of witnesses who were to appear before the grand jury and thereafter before the petit jury and because it had printed thereon a waiver of a "copy of a bill of indictment, list of witnesses before the grand jury, and arraignment?"*

(Enumeration of error 17). Appellant argues that the listing of four state's witnesses on that indictment when presented to the grand jury was prejudicial in that such list of witnesses influenced the grand jury as to the strength and nature of the state's case. He also argues that prejudice causing appellant to be denied a fair trial resulted from the use of a printed form on the indictment in the entry of a plea of not guilty. This including the objectionable language that was stricken in ink by defendant's attorney reads: "The defendant James Terry Estep *waives copy of Bill of Indictment, list of witness sworn before the grand jury, and arraignment, and* pleads not guilty." (Matter in italics stricken by pen, but still legible.) (R. 3). The contention is that all of this constitutes misleading data and cannot be regarded as mere surplusage because it is prejudicial. These identical matters were presented to the Supreme Court in *White v. State,* 230 Ga. 327, supra, and held to be without merit, that court stating at page 339, "These are mere pro-forma matters that do not carry any implication as to the guilt or innocence of the accused one way or another."

8. *Were portions of the district attorney's closing argument so prejudicial that the court erred in refusing to rebuke him and in overruling motions for mistrial?* (Enumerations of error 19 and 20). The two final enumerations of error deal with portions of the district attorney's closing argument to the jury. We quote these two enumerations of error as follows: "19. The court erred in failing to take remedial action and in not declaring a mistrial when the district attorney argued 'If you let this man go, we might as well quit trying to convict any man for burglary in this county.' (T. 48). 20. The court erred in failing to take remedial action and in not declaring a mistrial when the district attorney argued, 'What he is trying to do — because he is a good lawyer and a good friend of mine — he knows he doesn't have any merits on this case and he is just trying to confuse you.' (T. 48)."

In each instance defense counsel first moved that the district attorney be admonished and upon that motion being overruled followed with a motion for declaration of a mistrial. In each instance the trial judge stated only "Motion overruled" and "Motion for a mistrial overruled." No rebuke was administered and no explanation made by the court to the jury.

The remarks objected to were improper as they were comments which had no relevance to the evidence adduced during the trial. Particularly objectionable was the personal reference to defense

counsel. As it is improper for a district attorney to urge his personal belief as to a defendant's guilt (*Manning v. State,* 123 Ga. App. 844, 846 (182 SE2d 690)) it is similarly wrong for the prosecuting attorney representing the majesty of the state to comment that opposing counsel *knows* the defendant to be guilty or *knows* his client's case is not meritorious.

Code § 81-1009 states the court's duty in the instance of counsel making statements of prejudicial matters which are not in evidence. It provides that "[O]n objection made, he shall also rebuke the counsel, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds." It also gives the judge an alternative whereby "in his discretion" he may order a mistrial. Some affirmative action must be taken by the court. The basis is stated in *Howard v. Renfroe,* 93 Ga. App. 59, 62 (90 SE2d 598) to be "The gist of the error is that where the rebuke is not made or cautionary instructions given the improper argument goes with the apparent sanction of the court. *Butler v. State,* 142 Ga. 286 (11) (82 SE 654)." See also *Martin v. State,* 10 Ga. App. 798 (1) (74 SE 306) and *Pelham & Havana R. Co. v. Elliott,* 11 Ga. App. 621 (5) (75 SE 1062).

In dealing with comments by one attorney concerning another our court in *Atlantic C. L. R. Co. v. Coxwell,* 93 Ga. App. 159 (91 SE2d 135) used language that is peculiarly applicable to the case at bar. There at page 168 the court said "Courts should not permit counsel in the argument of one cause to refer to arguments of opposing counsel in another with a view to discrediting their sincerity. *Port Royal & Western Carolina R. Co. v. Davis,* 95 Ga. 292 (5) (22 SE 833). The statement was exceedingly improper. *Atlanta Coca-Cola Bottling Co. v. Childers,* 60 Ga. App. 868 (5 SE2d 388). While, under the provisions of Code § 81-1009, where counsel is guilty of improper conduct and a motion for a mistrial is made, the court should take corrective measures, whether or not the motion should be granted is largely in his discretion, but his failure to 'rebuke the counsel, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds' was error."

As the enumerations of error dealing with improper argument are meritorious it is incumbent upon us to order a new trial.

*Judgment affirmed in part; reversed in part. Hall, P. J., concurs. Evans, J., concurs specially.*

ARGUED APRIL 4, 1973 — DECIDED SEPTEMBER 21, 1973 —

Millard C. Farmer, Jr., for appellant.

Eldridge W. Fleming, District Attorney, William F. Lee, Jr., for appellee.

Evans, Judge, concurring specially. I agree with the results reached by the majority opinion, but on page 916 the case of Howard v. Renfroe, 93 Ga. App. 59, 62 (90 SE2d 598), is quoted as follows: "The gist of the error is that where the rebuke is not made or cautionary instructions given the improper argument goes with the apparent sanction of the court." This is contrary to the language in the statute which requires both a rebuke and cautionary instructions where improper argument is made, or that a mistrial be granted. Code § 81-1009 states: ". . . it is duty of the court to interpose and prevent the same, and on objection made, he shall also rebuke the counsel, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds."

For too long now our appellate courts have overlooked the conjunction "and" and interpreted it to be the disjunctive "or" — as used in the statute. But it is plain as daylight that the judge must rebuke counsel and (not or) by all needful and proper instructions to the jury endeavor to remove the improper impression from the minds of the jurors, when objection is made to improper remarks of counsel.