## A96A2354. GEOFFRION v. THE STATE.
(482 SE2d 450)

MCMURRAY, Presiding Judge.

Defendant was tried before a jury and found guilty of driving under the influence of drugs, namely methamphetamine, to the extent it was less safe for him to drive (Count 1), driving under the influence of a controlled substance, by operating a motor vehicle while there was methamphetamine in his urine (Count 2), violation of the Georgia Controlled Substances Act by possessing methamphetamine (Count 3), violation of the Georgia Controlled Substances Act by possessing marijuana, less than one ounce (Count 4), and possession of an open container of alcoholic beverage while operating a motor vehicle (Count 5). The evidence adduced at trial revealed that at 2:00 a.m. on April 15, 1995, Harris County Reserve Deputy Sheriff Martin and Sergeant Watson were on routine patrol when they observed defendant's "Ford Truck driving very erratic, weaving across the center line, weaving on the roadway." The driver "crossed the center line repeatedly as [the officers] followed him." During a traffic stop, Sergeant Watson "could smell a strong odor of alcohol on [defendant's] person as well as his breath and he appeared to be under the influence of alcohol or something to me [Sergeant Watson] at that point." Defendant told the officers "he was drinking down [at Kim's Cove] and was on his way back." In response to the question of when was the last time he had something to drink, "[h]e replied that he had a drink coming up that road after we [the officers] got behind him[, . . . but he] dumped [it] in the passenger's side of the floor-

board of the vehicle." At this point, defendant was placed under arrest and "advised of his implied consent warnings." Defendant also received a *Miranda* warning. An inventory search of the vehicle revealed "partially smoked suspected marijuana cigarettes in the ashtray. What appeared to be marijuana and several hand-rolled cigarette butts that appeared to be marijuana cigarettes. There was a six-pack of [cold] beer on the passenger's side of the floorboard that had not been opened." Also, "a glass [was] found inside the truck like a regular drinking glass and it was still, had, what smelled like alcohol . . . in it." After a pat-down search, "[n]o weapons were found but there was a pill bottle in [defendant's] upper left-hand pocket of his shirt and at that time [Deputy Martin] asked [defendant] what was in the pill bottle and he replied, he did not know. [Deputy Martin] asked [defendant] again what was in the pill bottle and he [defendant] replied pot."

Vesna Stojkovic, a forensic chemist in the Drug Identification Unit at the Georgia Bureau of Investigation's Crime Laboratory in Columbus examined "one amber plastic container containing four hand-rolled cigarettes, three hand-rolled cigarette butts and a razor blade containing residue." She testified that defendant's "hand-rolled cigarettes are positive for marijuana," less than one ounce. Michelle Basham-Foster, a forensic toxicologist with the Georgia Bureau of Investigation, testified that defendant's "urine specimen was positive for methamphetamine[, . . . and also] positive for ethyl alcohol equal to a blood alcohol of .09 grams percent." She also testified that Ephedrine, an over-the-counter amphetamine-type drug, "would not give a response for methamphetamine."

Defendant was granted permission to file out-of-time motions, and this direct appeal followed. *Held*:

1. Defendant first contends he was denied a fair trial because the State's attorney "argued in opening [that] defendant was accused of Driving under the Influence of Alcohol when he was indicted for Driving under the Influence of a Controlled Substance."

The State's attorney referred in opening statement to "the offenses that you have heard us name. Which are driving under the influence of intoxicants, two counts, violation of the Georgia Controlled Substance Act in that he possessed methamphetamine, possession of marijuana, and violation of the open container law." After describing the expected forensic evidence of both alcohol and methamphetamine found in defendant's urine, the State's attorney summarized for the jury: "So he's D.U.I. for two reasons. One because of the alcohol in his system and secondly because of the methamphetamine in his system."

In light of the specific allegations in the special presentment, this statement was misleading and inaccurate, for defendant was

never charged with any offense involving the ingestion of alcohol or intoxication therefrom. This erroneous statement amounted to a theory of guilt unauthorized by the charges as laid by the State, even though there was forensic evidence before the jury that defendant had a blood alcohol level of .09 grams percent. Defense counsel rebutted this inaccurate statement in his own opening statement by reminding the jury that the "indictment alleges that the defendant was driving under the influence of methamphetamine and that's it. The indictment does not charge him with driving under the influence of alcohol." But no objection to the opening statement by the State's attorney was ever interposed for a ruling by the trial court.

"The failure to make a timely and specific objection is treated as a waiver. *Herrin v. State*, 230 Ga. 476 (1) (197 SE2d 734) (1973)." *Seabrooks v. State*, 251 Ga. 564, 566 (1), 567 (308 SE2d 160). In the case sub judice, any valid issue arising from improper opening statements "has been waived due to the absence of any [timely] objection below. [Cit.]" *Smith v. State*, 221 Ga. App. 428 (3) (472 SE2d 4). Moreover, since there was no charge on intoxication from alcohol, nor any verdict form or jury determination of intoxication by alcohol, it cannot be said that this opening statement, even if improper, in any reasonable probability changed the result of trial. See *Bright v. State*, 265 Ga. 265, 285 (19) (a) (455 SE2d 37). This enumeration is without merit.

2. Defendant contends the trial court erred in denying his motion to suppress the results of urinalysis and also his motion in limine without the benefit of a hearing.

Defendant was arraigned on September 18, 1995, and counsel was "retained the day after arraignment," but the motion to suppress was filed on September 22, 1995, along with a waiver of formal arraignment and discovery motions. The trial court denied the motion to suppress as untimely. Defense counsel then made an oral motion in limine, contending "the implied consent rule was not properly complied with. . . ." The trial court conducted a hearing where Deputy Martin testified he gave an "implied consent" warning to defendant; that he gave defendant a urine test; and that defendant never requested "any other kind of test." Defense counsel informed the trial court: "We're not going to put any evidence on at this time," whereupon his motion in limine was overruled.

(a) The trial court did not err in refusing to hold a hearing on defendant's tardy motion to suppress. *Baseler v. State*, 213 Ga. App. 822 (1) (446 SE2d 250).

(b) Contrary to defendant's contentions, the trial court clearly overruled defendant's motion in limine, after a hearing. Accordingly, we find no merit in this enumeration. See *Cobb County v. Princeton Assoc.*, 205 Ga. App. 72 (1) (421 SE2d 102).

3. Next, defendant contends the trial court erred in failing to exclude the results of the urinalysis.

"A motion in limine is closely related to a motion to suppress. Ga. Crim. Trial Prac. (1993 ed.), § 14-52. The same appellate rules as to factfinding and witness credibility determination apply in both types of hearings. ' " ' "Factual and credibility determinations made by a trial judge after a suppression hearing (or a motion in limine hearing to exclude evidence) are accepted by appellate courts unless clearly erroneous." ' " ' *Baldwin v. State*, 263 Ga. 524, 525 (1) (435 SE2d 926)." *State v. Leviner*, 213 Ga. App. 99 (1) (443 SE2d 688).

The implied consent warning defendant received in the case sub judice properly informed him that he was "entitled to additional chemical tests of blood, breath, urine or other bodily substance at [his] own expense and from qualified personnel of [his] own choosing." The evidence was in conflict whether defendant ever requested a second test of his own choosing. Deputy Martin denied that defendant "told Sergeant Watson that because of the urinalysis that he [defendant] also wanted to do a blood test. . . ." The evidence thus supports the trial court's determination that the results of the State-administered urinalysis were admissible. Consequently, the trial court did not err in overruling defendant's motion to exclude from evidence the results of that urinalysis.

4. Over defendant's hearsay objection, the trial court admitted into evidence the police report written by Sergeant Watson. This evidentiary ruling is enumerated as error.

"[W]here the veracity of a witness is at issue, and that witness is present at trial, under oath, and subject to cross-examination, the prior consistent out-of-court statement of the witness is admissible. In this case the witness [Sergeant Watson] was [repeatedly] asked by the defense whether he [omitted several crucial details from his police report]. This is an attack on [Sergeant Watson's] credibility which justifies the introduction of [his police report as a] prior consistent statement under *Cuzzort*[ *v. State*, 254 Ga. 745 (334 SE2d 661)]." *Edwards v. State*, 255 Ga. 149, 150 (2), 151 (335 SE2d 869). Furthermore, the admission of this police report does not mandate the giving of a jury instruction on impeachment. "Here there is no inconsistency between the testimony of [Sergeant Watson] at trial and [his] prior statement[s] [in the police report]. Impeachment is not involved." *Cuzzort v. State*, supra at 745.

5. The fifth enumeration contends the trial court erroneously allowed the State's attorney to "delve into [defendant's] character."

Our review of the transcript reveals that defendant himself first elicited reference to subsequent traffic stops, during cross-examination of Sergeant Watson.

"It is axiomatic that the defendant alone can place his character

in issue in a criminal case. [Cits.] It is difficult to imagine a more conclusive method of doing so than for his own counsel to ask direct questions regarding [other] convictions [or] criminal offenses. Once the 'character door' is opened, it is opened for all evidence that bears on the defendant's character — convictions of crimes, guilty and nolo contendere pleas, juvenile offense[s], and incidents which illustrate the defendant's character. [Cits.]" *Scarver v. State*, 130 Ga. App. 297 (2) (202 SE2d 850). In our view, defendant cannot complain on appeal if the State followed up on issues he himself injected. *Wilkes v. State*, 221 Ga. App. 390, 393 (3) (471 SE2d 332).

6. Defendant's sixth enumeration complains that "[t]he trial court erred in admitting the urinalysis and drug report into evidence because of a failure of the chain of custody." But defendant's brief fails to show where he made any such an objection to chain of custody. Our review of the transcript reveals that, on direct examination, Michelle Basham-Foster related the results of urinalysis as positive for methamphetamine without objection. She repeated her findings under cross-examination.

Chain of custody is preliminary proof, in the nature of foundation evidence. Since defendant raised no contemporaneous objection, he forfeited his right to insist that the forensic analysis of his urine be excluded from evidence. *Sharpe v. Dept. of Transp.*, 267 Ga. 267 (1) (476 SE2d 722).

7. In his seventh and ninth enumerations, defendant urges the general grounds, as to his convictions on the "possession of methamphetamine charge, the DUI charges, and the open container charge. . . ." He does not challenge his conviction for possession of marijuana in Count 4.

The State presented sufficient circumstantial evidence to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, of operating a motor vehicle while under the influence of the controlled substance methamphetamine, as alleged in Count 2. This same evidence also showed beyond a reasonable doubt that defendant unlawfully possessed the controlled substance methamphetamine, as alleged in Count 3. *Green v. State*, 260 Ga. 625 (1), 626 (398 SE2d 360). Proof that he weaved and crossed the centerline is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the verdict that defendant was a less safe driver due to the methamphetamine in his system, as alleged in Count 1. *Grant v. State*, 215 Ga. App. 10, 12 (449 SE2d 545). His admission against interest that he was drinking while driving, coupled with proof that a glass smelling of alcohol was hidden under the passenger seat and the carpet was wet where defendant had poured out his alcoholic beverage, is sufficient to authorize his conviction under OCGA § 40-6-253 (b), the open container law.

8. Defendant complains the State's attorney used unfair and prejudicial closing argument.

(a) In all but two instances, defendant made no contemporaneous objection to the prosecutor's closing argument. Nevertheless, he argues that the "cumulative acts of the [S]tate . . . prejudiced and inflamed the jury."

" 'The time to object to improper closing argument is when the impropriety occurs at trial, when the trial judge may take remedial action to cure any possible error.' *Todd v. State*, 261 Ga. 766, 767 (410 SE2d 725) (1991)." *Simmons v. State*, 266 Ga. 223, 228 (6) (b) (466 SE2d 205). "When no timely objection is interposed, the test for reversible error is not simply whether or not the argument is objectionable, or even if it might have contributed to the verdict; the test is whether the improper argument in reasonable probability changed the result of the trial. *Ford v. State*, 255 Ga. 81, 90 (335 SE2d 567) (1985)." *Todd v. State*, 261 Ga. 766, 767 (2) (a), supra. In the case sub judice, we have considered the closing arguments which purportedly bolster the testimony of the arresting officers and argue punishment to the jury, and find them to be within the "considerable latitude . . . allotted to prosecutors in making closing argument. *Philmore v. State*, 263 Ga. 67, 69 (428 SE2d 329) (1993)." *Crowe v. State*, 265 Ga. 582, 592 (18) (c) (458 SE2d 799).

(b) In two instances, defendant did object to closing argument. In response, the trial court observed that the State's attorney "may draw logical conclusions from the evidence." That "is 'tantamount to a rebuke and sufficient under the circumstances.' [Cit.]" *Allstate Ins. Co. v. Brannon*, 214 Ga. App. 300, 303 (4) (447 SE2d 666).

(c) Defendant also objected to the following characterization of defense counsel: "He's not here to see justice. He's not here to see the right thing is done. He's not here to see that the streets of Harris County are safe from drunk drivers crossing the center line at 2:00 o'clock coming from Columbus."

We agree that this closing argument, in the nature of "unflattering characterizations," is not any reasonable and permissible inference to be drawn from the evidence adduced at trial and disapprove of it. "[W]e find it unnecessary and undesirable for prosecutors to resort to such characterizations." *Simmons v. State*, 266 Ga. 223, 228 (6) (b), 229, supra. Nevertheless, given the scientific evidence in the case sub judice, we find it highly probable that this unnecessary and undesirable argument did not taint the verdict. Consequently, under the test of *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869), we conclude the erroneous closing argument was harmless in this instance.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., and Blackburn, J., concur. Beasley, J., concurs specially. Johnson and Ruffin, JJ., dissent.*

BEASLEY, Judge, concurring specially.

I concur in the judgment because the court's failure to further chastise the prosecuting attorney's improper argument or add further to its jury instruction at the time did not deprive defendant of a fair trial. Fulfillment of the court's duty, codified in OCGA § 17-8-75, was incomplete at that stage.

There is no question that the state's attorney spoke outside the broad parameters of permissible closing argument when he turned to commentary on defendant's counsel. It was totally irrelevant to the issue of defendant's guilt or innocence and focused on the wrong person, whose professional involvement in the case had nothing to do with the acts with which defendant was charged. The state's attorney started this deviation by saying they were friends and that he was invited to counsel's wedding the next weekend, but then he turned to the attack on counsel's role, motive, and lack of responsibility for consequences of acquittal. Defendant's counsel objected, explained as his ground that this was mischaracterization of defense counsel and of the law, and said "thank you." No particular relief was requested, and no motion for mistrial was made.

Argument resumed along the same line, and again defendant's counsel objected, this time asking for a ruling. The court instructed the jury that it "may draw logical conclusions and deductions from the evidence that is presented," as it likewise instructed the jury when objection was made to another argument that similarly was not based on evidence. Defendant did not seek additional rectification.

In its charge to the jury immediately following the closing arguments, the court repeated and elaborated on that instruction. It paired the indictment with the plea of not guilty and explained that they were not evidence. It defined evidence and differentiated between direct and circumstantial evidence. It identified what was and what was not evidence, stating: "Evidence includes all the testimony of the witnesses and the exhibits admitted during the trial. It also includes any facts agreed to by counsel. It does not include the indictment, or the opening statements and closing arguments by the attorneys." Five times, once for each crime of which defendant was accused, the court instructed the jury to decide the issue "after considering the testimony and evidence presented to you together with the charge of the Court."

Thus, if there was any ambiguity about whether the court's instruction, given when defendant called a halt to the prosecuting attorney's improper aspersions, was a remonstrance or an approval, it was removed by the general charge. By it the court repeatedly made clear what the issues were and the basis upon which they were to be decided. There is little doubt that the jury understood that the prosecuting attorney's remarks were not evidence and, where not

based on evidence presented during the trial, were not to be factored into their deliberations. The express exclusion of the closing argument from the legitimate bricks and mortar on which factfinding could be built, together with the repeated reminders of what could constitute bricks and mortar, eliminated any error committed by the court at the time defendant sought the court's intervention.

RUFFIN, Judge, dissenting in part.

In Division 8 (c), the majority finds the prosecutor's improper closing arguments about defense counsel harmless in light of the scientific evidence produced at trial. Because I disagree with the majority's conclusion that the weight of the evidence precludes prejudice from these improper comments, I respectfully dissent.

There is no tyrant like the tyrant "Harmless Error!" While it is the nature of appellate judges to make concessions to the doctrine of harmless error, and rightfully so, such concessions should be made only after scrupulous analysis demands that we do so. The error in this case is an error that is infinitely more worthy of our consideration than the majority would have us believe. Furthermore, the error is so egregious that it exhorts us to examine, not evade it.

The standard for determining whether improper argument of counsel resulted in a miscarriage of justice is whether "it is highly probable that the error did not contribute to the judgment." (Citations and punctuation omitted.) *Jones v. State*, 159 Ga. App. 704, 705 (2) (285 SE2d 45) (1981). Although Georgia appellate courts have been reluctant to order new trials based upon improper argument in cases involving significant evidence of guilt, reversal is not without precedent. See, e.g., *Houston v. Estelle*, 569 F2d 372 (5th Cir. 1978) (prosecutor's improper argument resulted in new trial for defendant convicted of heroin possession despite evidence that officer saw matchbook containing 92 foil wrappers of heroin fall from defendant's body).

As recognized by the Eleventh Circuit, "overwhelming evidence of guilt" is not dispositive in considering whether a defendant has been afforded a fair trial. *Coleman v. Kemp*, 778 F2d 1487, 1540-1541 (11th Cir. 1985) (presumed prejudice from pretrial publicity resulted in new trial despite overwhelming evidence of guilt), cert. denied, 476 U. S. 1164 (106 SC 2289, 90 LE2d 730) (1986). "To hold otherwise would mean an obviously guilty defendant would have no right to a fair trial before an impartial jury, a holding which would be contrary to the well established and fundamental constitutional right of every defendant to a fair trial. In *Irvin v. Dowd,* the Supreme Court noted that a 'fair trial in a fair tribunal is a basic requirement of due process' and stated that '(t)his is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in

life which he occupies.' 366 U. S. at 722, 81 S. Ct. at 1642." *Coleman*, 778 F2d at 1541; see also *Brooks v. Kemp*, 762 F2d 1383, 1431, n. 2 (11th Cir. 1985) (Johnson, J., dissenting) ("[A] rule that where . . . evidence is strong, prejudice [from improper argument] is difficult or impossible to establish, is tantamount to an assertion that those procedural protections required by the Constitution apply only to those against whom the evidence is scant."), vacated, 478 U. S. 1016 (106 SC 3325, 92 LE2d 732) (1986), opinion reinstated, 809 F2d 700 (11th Cir. 1987).

During closing argument in this case, the prosecutor improperly denigrated defense counsel and his role at trial. The prosecutor argued that defense counsel had portrayed the State's case in the worst possible light "just like he's supposed to do so that you can let his guilty defendant off over here. That's what he's here for and that's what he does." The prosecutor then stated: "He's not here to see justice. He's not here to see that the right thing is done. He's not here to see that the streets of Harris County are safe from drunk drivers crossing the center line at 2:00 o'clock coming from Columbus." Although defense counsel objected following these statements, the trial judge remained silent, and the prosecutor continued: "He's here to represent the interest of that man sitting over there. And if that man goes out on his usual drunken ride up in Columbus tonight and wipes out a school bus or three citizens or a family coming home from Atlanta late at night or for some reason whatever somebody might be doing, that ain't his problem. . . . He can go and say, well, hey, I just did my job and hey, they found him not guilty." Defense counsel again objected but then requested a ruling. In response, the trial court merely stated: "You may draw logical deductions and conclusions from the evidence that is presented."

Despite the fact that a profusion of oral irrelevancies is not proof of that which is relevant, either directly or indirectly, defense counsel did not preserve his first objection to the prosecution's argument when he failed to request a ruling from the trial judge, resulting in waiver of the error. *Johnson v. State*, 170 Ga. App. 433, 436 (5) (317 SE2d 213) (1984). But the second objection and request for a ruling was not waived. Although somewhat ambiguous, the trial court's response appears to have overruled the objection and embraced the prosecutor's comments as "logical deductions and conclusions from the evidence." Accordingly, the issue of whether the trial court erred by failing to sustain this objection has been preserved for appeal. *Hall v. State*, 180 Ga. App. 881, 882 (3) (350 SE2d 801) (1986). If the trial court improperly overruled the objection, this Court must consider whether "it is highly probable that the erroneous argument, unchecked by the trial court, did not contribute to the verdict." Id. at 885.

During closing argument, the prosecution "is permitted to draw deductions from the evidence." (Citation and punctuation omitted.) *Clark v. State*, 146 Ga. App. 697 (3) (247 SE2d 221) (1978). The comments about defense counsel, however, involved neither evidence nor deductions or conclusions therefrom. Rather, they were personal, denigrating, and improper remarks. As this Court has found previously, personal remarks about defense counsel have no place in the prosecution's closing argument. *Estep v. State*, 129 Ga. App. 909, 915 (8) (201 SE2d 809) (1973) (physical precedent only). In *Estep*, the prosecuting attorney stated: "What [defense counsel] is trying to do — because he is a good lawyer and a good friend of mine — he knows he doesn't have any merits on this case and he is just trying to confuse you." (Punctuation omitted.) Id. at 915 (8). Finding the remark improper, this Court noted that "[p]articularly objectionable was the personal reference to defense counsel. As it is improper for a district attorney to urge his personal belief as to a defendant's guilt (cit.) it is similarly wrong for the prosecuting attorney representing the majesty of the state to comment that opposing counsel *knows* the defendant to be guilty or *knows* his client's case is not meritorious." (Emphasis in original.) Id. at 915-916.

Confronted with such improper and irrelevant remarks, a trial judge should act properly and promptly so that the integrity of the proceeding and the rights of the accused are protected. Id. at 916. "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the *duty* of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender." (Emphasis supplied.) OCGA § 17-8-75; see also *Earnest v. State*, 262 Ga. 494, 495 (422 SE2d 188) (1992) (OCGA § 17-8-75 requires the trial court to act when counsel makes a timely objection).

As recognized by the majority, the prosecutor's remarks in this case were clearly improper. Despite defense counsel's objection, and the trial judge's duty consistent with OCGA § 17-8-75, the trial judge did nothing to remove the improper impressions from the jurors' minds. Instead, the court simply stated that logical deductions and conclusions may be drawn from the evidence, thus implying that the prosecution's comments might be supported by the evidence.

The trial court erred in overruling Geoffrion's objection and giving the prosecution's argument " 'the apparent sanction of the court.' [Cits.]" *Estep*, supra at 916. Accordingly, I cannot find this error harmless. It is improbable that such denigrating remarks, received without rebuke from the trial court, "did not contribute to the judg-

ment." (Citations and punctuation omitted.) *Jones,* supra at 705 (2). Regardless of the weight of the evidence received, the trial court *sanctioned before the jury* improper attacks on defense counsel's role at trial.

Harmless error is not a rule of systemic necessity, but a relic of judicial convenience. It has the noxious consequence of blunting our opportunity to scrutinize; hence, it should be used sparingly and only in the clearest instances. When used in questionable or dubious circumstances, it becomes the bigot of the law and compromises judicial integrity. Both our human fallibility and our institutional imperfections should cause us to subject the harmless error doctrine to our severest scrutiny.

Courts are primarily and ultimately duty bound to protect a defendant's constitutional rights. See *Davis v. Passman,* 442 U. S. 228 (99 SC 2264, 60 LE2d 846) (1979); *Byars v. United States,* 273 U. S. 28 (47 SC 248, 71 LE 520) (1927). Here, the trial court failed to take the necessary steps to protect Geoffrion's right to a fair trial. Moreover, the approval of the trial court's inaction encourages prosecutors to cross the line of proper argument. Such improper argument compromises convictions and ultimately wastes the significant judicial and economic resources of the State expended in obtaining those convictions. If this Court allows prosecutors armed with overwhelming evidence of guilt to present improper argument without fear of reprisal, we are equally culpable in encouraging such conduct. We should not approach this error with such undeserved delicacy. As judges we cannot pursue the empty glory of popularity. We must not be ambitious for the applause of audiences or the approval of editors. Accordingly, I dissent.

I am authorized to state that Judge Johnson joins in this dissent.

DECIDED FEBRUARY 21, 1997.

*David J. Grindle,* for appellant.

*J. Gray Conger, District Attorney, E. Wayne Jernigan, Jr., Assistant District Attorney,* for appellee.